UNITED STATES of America,
Plaintiff–Appellee,

v.

Button Jack RHODES, Defendant–
Appellant.

No. 93–5439.

United States Court of Appeals,
Fourth Circuit.

Argued April 15, 1994.

Decided Aug. 17, 1994.

**ARGUED:** Maura K. Nolan, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Ruth Elizabeth Plagenhoef, Asst. U.S. Atty., Roanoke, VA, for appellee. **ON BRIEF:** Steven H. Goldblatt, Director, Bonnie I. Robin–Vergeer, Supervising Atty., Alfred E. Mottur, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law

Center, Washington, DC, for appellant. Robert P. Crouch, Jr., U.S. Atty., Roanoke, VA, for appellee.

Before WIDENER, HALL, and HAMILTON, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge K.K. HALL concurred. Judge HAMILTON wrote a concurring opinion.

## OPINION

WIDENER, Circuit Judge:

Button Jack Rhodes was convicted in the United States District Court for the Western District of Virginia of several firearms and drug offenses. On appeal, Rhodes raises three issues: (1) the admission of certain evidence concerning his prior convictions in New York state court in order to establish the predicate conviction for an 18 U.S.C. § 922(g)(1) offense was plain error; (2) the district court abused its discretion by denying Rhodes's motion to sever the drug and section 922(g)(1) counts of the indictment; and (3) the district court's discussion of a question asked by the jury during deliberations with counsel but outside the presence of the defendant was plain error. We find no reversible error in any of these contentions and we affirm Rhodes's convictions.

### I

On March 5, 1992, the Grand Jury handed down a seven-count superseding indictment against Rhodes. The seven counts were: (1) conspiring to make false statements to obtain firearms and to possess with the intent to distribute cocaine [1]; (2) aiding and abetting the making of false statements in connection with the purchase of a Bryco .380 pistol [2]; (3) aiding and abetting the making of false statements in connection with the purchase of a Taurus 9 mm pistol at Earl's Gun Shop; (4) aiding and abetting the making of false statements in connection with the purchase of a Taurus 9 mm pistol at Woodbrook Sports Supply; (5) possessing with the intent to distribute cocaine base (crack) [3]; (6) possessing a Beretta .380 pistol despite having been previously convicted of a felony [4]; and (7) carrying and using a firearm during and in relation to a drug trafficking crime.[5] At arraignment, Rhodes pleaded not guilty to all of the charges. On March 12, 1992, Rhodes filed a motion to sever Counts Five, Six, and Seven (the possession of crack, possession of a firearm by a felon, and use of firearm during a drug offense charges) from the four firearms and conspiracy charges. The district court denied the motion on the morning of the first day of the trial.

### Government Exhibits Six and Seven

During the first day of trial, Government Exhibits Six and Seven were admitted into evidence. Exhibits Six and Seven were certified copies of convictions on indictments returned in the Supreme Court of the State of New York, County of the Bronx. Exhibit Six contains an indictment for murder in the second degree, criminal possession of a weapon in the second degree, and criminal use of a firearm in the second degree. The indictment alleged that Rhodes, using a loaded pistol, had shot and killed Roberto Ayon. A felony complaint attached to the indictment alleged that Rhodes had shot Ayon in the head. Pursuant to this indictment, Rhodes pleaded guilty in the New York court to first degree manslaughter. Exhibit Seven contained an indictment for attempted murder in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the second degree,[6] assault in the first degree, and reckless endangerment in the first degree. The indictment alleged that Rhodes had shot at and injured Sam Johnson. A felony complaint attached

---

1. In violation of 18 U.S.C. § 371.

2. In violation of 18 U.S.C. §§ 2, 922(a)(6) & 924(a)(1)(B).

3. In violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

4. In violation of 18 U.S.C. § 922(g)(1).

5. In violation of 18 U.S.C. § 924(c)(1).

6. This count of the New York indictment was later dismissed in the New York court.

to the indictment alleged that Rhodes shot Johnson in the stomach and Johnson had to be hospitalized. A jury found Rhodes guilty of criminal possession of a weapon in the second degree and reckless endangerment in the first degree, and apparently not guilty of the remaining counts of the indictment which were not dismissed. A copy of the transcript of Rhodes's sentencing is also included in the certified documents.

Government Exhibits Six and Seven were identified by Bureau of Alcohol, Tobacco, and Firearms special agent Brian R. Swann. Agent Swann explained that he had obtained the certified records of conviction from the Clerk of the Supreme Court for the County of the Bronx. The Assistant United States Attorney then moved the exhibits' admission into evidence. Rhodes's counsel stated, "No objection" and the district court then ruled, "Be so admitted."

The Assistant United States Attorney then asked Agent Swann about the convictions contained in the certificates of conviction. Agent Swann commenced to read that part of Exhibit Six to the jury. At that point, Rhodes's counsel objected to Agent Swann's reading the exhibits into the record. Rhodes's counsel stated, "If the exhibits are going to be introduced into evidence, the exhibits would speak for themselves." The district court ruled in Rhodes's favor on the objection, and Agent Swann was permitted only to state the crimes for which Rhodes had been convicted under each indictment. The Assistant United States Attorney made reference to Exhibit Six in her opening and closing arguments by mentioning the fact that Rhodes was a convicted felon who had been indicted for murder but pleaded guilty to manslaughter.[7] No objection or motion for a mistrial was made in response to these remarks.

7. Specifically, during her opening statement, she stated, "Mr. Rhodes is from New York, and part of our proof, elements of our proof, is that he's a convicted felon. One of his convictions is manslaughter. He was charged with murder and then pled guilty to manslaughter and served time. He's a convicted felon from New York." During her closing argument, the Assistant said,

*The Jury's Question*

On the third morning of trial, the district court instructed the jury. After deliberating for approximately one hour (10:20–11:30), the jury sent a written question to the district judge. The question stated:

Concerning: Count 5

Is there a definition as to the amount of crack cocaine in possession considered to be for distribution vs. personal use?

[/s/ Foreman]

The court met with counsel in chambers to discuss the question. The defendant was not present. The court read the question to the attorneys. The following discussion about the question occurred between the court and counsel:

THE COURT:....

Now, in the charge, the three elements, of course, first, that the defendant knowingly possessed a controlled substance. Second, the substance was, in fact, cocaine base or crack cocaine. Third, that the defendant possessed the substance with intent to distribute it. In the charge as given there is no mention of quantity though that was argued and there was evidence that the quantity was consonant with distribution as against personal use.

MS. PLAGENHOEF [8]: Isn't that really a question that is asking if the law requires a specific amount? It sounds to me like they're asking if the law requires a specific amount to be proved to prove distribution.

THE COURT: Well, they may be, but I'm just reading it in the words she used, "is there a definition." It seems to me I can do one of two things. Either I can tell them that the question they ask depends on their resolution of the third element, whether the defendant possessed the substance with intent to distribute it. There isn't any quantity that I know of that says that if it's above this, it's for distribution; below this, it's personal use.

"There is no doubt at all that he was a convicted felon during all of this, convicted of manslaughter on his plea of guilty after being indicted for murder."

8. The Assistant United States Attorney.

Now, we did not give this charge which you offered, Miss Ruth. "The phrase 'with intent to distribute' means to have in mind or to plan in some way to deliver or transfer possession or control over a thing to someone else. In attempting to determine the intent of any person, you may take into your consideration all the facts and circumstances shown by the evidence received in the case concerning that person.

"In determining a person's 'intent to distribute' controlled substances, the jury may consider, among other things, the purity of the controlled substance ..." No evidence as to that. Yes, there is, [prosecution witness] Edwards as to some of the cocaine. "... purity of the controlled substance, the quantity of the controlled substance, the presence of equipment used in the processing or sale of controlled substance and large amounts of cash or weapons.

"The Government must prove beyond a reasonable doubt that the defendant intended to distribute the controlled substance alleged in the indictment."

MS. PLAGENHOEF: Would you read the note once more, Your Honor, please.

THE COURT: Leaving out the concerning Count 5, is there a definition as to the amount of crack cocaine in possession considered to be for distribution against personal use.

MS. PLAGENHOEF: Your Honor, I think the correct legal answer to that question is no, a plain and simple no.

THE COURT: That or an instruction that they already have the instructions they need I think would answer that question.

MR. HEBLICH [9]: I agree. I don't think there is—

MS. PLAGENHOEF: Unless you want to put in that you may consider those other things. There is no evidence in the record about some of them that I think it might be confusing. But if we phrased it either a simple no or you may consider the quantity

when deciding this issue, but there is no legal definition. I think no is easier.

MR. HEBLICH: I think I would vote for no, Judge. In the response give them back their question.

THE COURT: This I think is an answer that could go back. You all can shoot at it. "The specific answer to the jury's question is no. The jury must determine from the evidence and beyond a reasonable doubt if the defendant possessed the controlled substance with the intent to distribute it." That's the third element.

MS. PLAGENHOEF: That's fine with the Government, Your Honor.

MR. HEBLICH: That's fine.

At this point, the district judge had the response he intended to send to the jury typed and then read it back to the attorneys. The Assistant United States Attorney said, "We have no objection." Rhodes's counsel also stated, "No objection." It appears that the typewritten note was then sent to the jury without asking for comment by the defendant or calling the jury back in open court to hear the answer to its question.[10] The note was:

> The specific answer to the jury's question is no. The jury must decide from the evidence, and beyond a reasonable doubt, if the defendant possessed the controlled substance with the intent to distribute it.

The jury rendered its verdict less than one hour later, finding the defendant guilty on all seven charges. Rhodes appealed.

## II

Rhodes first argues that his convictions must be reversed because the district court admitted not only the fact of his felony convictions in New York in evidence, but also the surrounding circumstances and details, which were contained in the papers received from the New York state court. Rhodes made no objection to the admission of this information at trial. We therefore review for plain error. Fed.R.Crim.P. 52(b).

We start with the proposition that when a defendant offers to stipulate the fact

---

9. The defendant's attorney.

10. As is apparent, the entire in-chambers discussion, the jury note, and the court's response were placed on the record by the district court.

of his prior felony conviction, evidence of the nature of the conviction is irrelevant and should be stricken. See *United States v. Poore*, 594 F.2d 39 (4th Cir.1979). The nature of the conviction is not an element of Section 922(g)(1). See 18 U.S.C. § 922(g)(1) (requiring only a conviction without specifying type); *Poore*, 594 F.2d at 41 (decided under prior version of statute). However, when a defendant does not stipulate the fact of his prior conviction, the Government must prove it because it is an element of the offense. It is the proffer and admission of the extraneous material accompanying the certified records of Rhodes's convictions that we must examine in this case.

In *United States v. Olano*, — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court stated that an appellate court's authority is limited, for the purposes of Rule 52(b), to correcting errors which meet four requirements: (1) There must be an error—that is, a "[d]eviation from a legal rule;" (2) the error must be plain—that is, clear or obvious; and (3) the error must "affect substantial rights." *Olano*, — U.S. at — — —, 113 S.Ct. at 1776. In addition, appellate courts should exercise their discretion to correct errors under Rule 52(b) only "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." — U.S. at —, 113 S.Ct. at 1776 (citation and internal quotation marks omitted).

■ We need not decide in this case whether the admission of the additional information in the certified records of conviction was error and that it was plain. Assuming, *arguendo*, that the admission of the evidence was error that was plain, Rhodes cannot meet the third requirement that the error affected his substantial rights. The Supreme Court stated that "in most cases [this requirement] means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Olano*, — U.S. at —, 113 S.Ct. at 1778. This inquiry is substantially the same as a harmless error inquiry, "with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." — U.S. at —, 113 S.Ct. at 1778. We do not find that the error we assume for purposes of deciding this case affected Rhodes's substantial rights. In light of the overwhelming evidence of guilt offered against him, and the fact that he can point to no prejudice flowing to him by the admission of these materials,[11] we cannot say that the error affected the outcome of the proceedings. *Olano*, — U.S. at —, 113 S.Ct. at 1778. We therefore do not have authority under Rule 52(b) to correct Rhodes's claimed error.

## III

■ Rhodes next contends that the district court erred when it denied his motion to sever Counts Five, Six, and Seven of the indictment. These counts were the possession with intent to distribute charge, the Section 922(g)(1) (felon in possession of a firearm) charge, and the Section 924(c)(1) (use of a firearm during a drug trafficking crime) charge. Rhodes maintains that he was prejudiced by the failure to sever because the evidence of his New York convictions, both of which concerned offenses carried out by use of a gun, improperly influenced the jury to convict him on the conspiracy and three other firearms charges. There was no request to so instruct, and the district court did not give a limiting instruction about the use of the prior felony evidence. Of course, no objection was made to the lack of a limiting or cautionary instruction in the jury charge.

---

11. Rhodes's arguments on this point all go to prejudice resulting not only from the claimed error. He argues that the district court should have given a limiting instruction, although none was requested, and that the prosecutor made prejudicial remarks in her opening and closing statements which referred to information in the records of conviction. See note 7, *supra*. We hold that it was not plain error for the district court not to give a limiting or cautionary instruc-

tion in the absence of a request. We reach the same conclusion on the improper argument issue. As we noted in our discussion of the facts, *supra*, no objection or motion for a mistrial was made after either comment. We also reject Rhodes's attempt to meet the substantial rights prong of the *Olano* test by bootstrapping his claimed prejudice to prejudice flowing from other alleged errors.

Rhodes does not take issue with the joinder of Counts Five, Six, and Seven under Fed.R.Crim.P. 8(a).[12] Rather, he argues that the district court abused the discretion given to it under Fed.R.Crim.P. 14 to sever counts of an indictment for separate trial. We review the district court's denial of a motion to sever counts of the indictment for separate trial for "clear abuse [of discretion] affecting substantial rights of the accused." *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir.1977); see *United States v. Altomare*, 625 F.2d 5, 8–9 (4th Cir.1980). We can find no clear abuse of the district court's discretion in this case. The motion to sever stated only that Rhodes would "be prejudiced by a joinder of [Counts Five, Six, and Seven]." When arguing the motion, Rhodes's counsel stated that he "would rely on the reasons stated in the motion." The district court found "no basis for severance" and denied the motion. We cannot say that the district court clearly abused its discretion in denying the severance motion, especially when no specific allegation of prejudice was made and none is apparent from the record.

Rhodes apparently relies on *United States v. Silva*, 745 F.2d 840 (4th Cir.1984), for the proposition that introduction of a prior felony conviction to prove an element of one count in an indictment requires the district court to give a limiting instruction when a motion to sever is denied. Although the routine giving of a limiting instruction may, indeed, be the better approach, we reject the argument that such is required in each instance. In a case such as this, where three of the narcotics and firearms offenses were all being committed at the same instant, and Rhodes would leave Charlottesville with guns and come back with drugs, the case is so obviously one for joinder

under Fed.R.Crim.P. 8(a), we decline to find necessary a limiting instruction absent request or patent prejudice, neither of which was present here.

## IV

■ Rhodes's final contention is that, although his counsel was present and agreed to the response, the district court erred in discussing the jury's question and formulating the response in his absence. Rhodes's claim is governed by Rule 43 of the Federal Rules of Criminal Procedure, which codified the defendant's right to be present at every stage of the trial under the Fifth and Sixth Amendments. See *United States v. Camacho*, 955 F.2d 950, 952 (4th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 571, 126 L.Ed.2d 470 (1993).[13]

Rule 43(a) provides: "The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." Fed.R.Crim.P. 43(a). In *Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975), after some two hours of deliberation, the jury sent out a note inquiring if the judge would "'accept the Verdict—"Guilty as charged with extreme mercy of the Court."'" Without notifying the defendant or his counsel, the judge instructed the marshal who delivered the note 'to advise the jury that the court's answer was in the affirmative.'" 422 U.S. at 36, 95 S.Ct. at 2093. The Court held that Rule 43 was violated, obviously by the defendant's absence during the interchange, and that the

**12.** While the motion stated they were [not] "sufficiently similar to or connected with" the other counts, apparently a Rule 8(a) objection, it is patently without merit in that context.

**13.** Rhodes relies on *Camacho* as support for his position, but *Camacho* is inapposite. There, the district court started the trial in the defendant's absence, despite snowy weather. 955 F.2d at 954. When the defendant arrived some fifty minutes after the trial began, he had missed some testimony and all of the voir dire. In holding that the error was not harmless, we

stated that "[t]he most serious problem was Camacho's absence during *voir dire*." 955 F.2d at 956. Rule 43(a) includes the impaneling of a jury as one instance in which the defendant's presence is required. Fed.R.Crim.P. 43(a). See *United States v. Hanno*, 21 F.3d 42, 46 (4th Cir.1994). These cases involve errors far different than the one claimed by Rhodes. While for a different reason, *Camacho* apparently anticipated the decision in *Crosby v. United States*, —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), on similar facts.

rule required that a note sent out by the jury "should have been answered in open court and ... petitioner's counsel should have been given an opportunity to be heard before the trial judge responded." In *Rogers* the district court, as noted, did neither of these things, and instead answered the jury's note by way of an oral relay via the marshal without informing the defendant or counsel. 422 U.S. at 36, 95 S.Ct. at 2093. The court stated that a violation of Rule 43 could be harmless error, but after considering the substance of the information in the judge's answer [14] and the manner in which the judge's response was relayed to the jury, it would not hold the error harmless in Rogers's case. 422 U.S. at 40, 95 S.Ct. at 2093. However, a crucial difference between *Rogers* and Rhodes's case is that Rhodes's counsel was not only given an opportunity to be heard; he was present in chambers, contributed to the discussion, and favored the answer the judge gave.

The narrow question presented in this case—whether the defendant, and not merely defense counsel, must be present when an answer to a jury question sent out during deliberations is formulated and given—is one which also is controlled by *Rogers*. In two pre-*Rogers* cases, this circuit held that a procedure such as the one employed here would not be error under the Due Process Clause or under Rule 43(a). We addressed whether the Due Process Clause of the Fourteenth Amendment was offended by in-chambers discussions that excluded the defendant in *Root v. Cunningham*, 344 F.2d 1 (4th Cir.), *cert. denied*, 382 U.S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965).[15] In *Root*, we were required, on federal habeas review, to exam-

ine whether a practice under Virginia law of conferring on jury instructions in chambers with counsel but without the defendant violated the Due Process Clause of the Fourteenth Amendment. After examining the Virginia cases, discussing the problem and noting the practicalities involved and the judge's responsibility for formulating jury instructions, we held that the Due Process Clause was not offended by the practice. 344 F.2d at 4. In *United States v. Gregorio*, 497 F.2d 1253 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974), we examined the history of Rule 43 and a defendant's common law privilege to be present at all stages of a proceeding. We then held that because an in-chambers conference on jury instructions is purely legal in nature and the defendant, in most cases, cannot contribute to the legal discussion and may be confused by the conference, a defendant does not have a common law or constitutional right to be present in chambers when jury instructions are being discussed. 497 F.2d at 1260.

Our pre-*Rogers* circuit precedent, *Gregorio* and *Root*, which hold that the defendant has no right to be present at an in-chambers discussion on jury instructions, have been implicitly overruled by the Supreme Court's holding in *Rogers*.[16] *Rogers* holds that Rule 43(a) is violated when the defendant is not present during the formulation of an answer to a jury question such as the one made in this case. However, the Court suggested that it could find a violation of Rule 43 harmless if, in constructing the answer to the jury's question, defense counsel was given an opportunity to be heard. 422 U.S. at 39, 95

**14.** The almost immediate verdict, some five minutes after the judge's reply, and the judge's answer to the jury's question, suggested that the approval of a verdict recommending extreme mercy may have induced unanimity by implying that such a verdict might be an acceptable compromise. See 422 U.S. at 37 & 40, 95 S.Ct. at 2093–94 & 2095.

**15.** In a part of *Root* not applicable to this case, we held that the test for ineffective assistance of counsel was whether "the representation [was] so transparently inadequate as to make a farce of the trial." 344 F.2d at 3. We disavowed this

aspect of *Root* because the Supreme Court had changed the rule in this court's opinion in *Marzullo v. State of Maryland*, 561 F.2d 540, 542–43 (4th Cir.1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978). Our disavowal of *Root*'s ineffective assistance test, however, did not affect our holding under the Due Process Clause.

**16.** We had held in a pre-*Rogers* case that the harmless error rule applied in a case under Rule 43(a). *United States v. Arriagada*, 451 F.2d 487 (4th Cir.1971), *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972).

S.Ct. at 2094–95. The court also suggests that the answer should be given in open court. As discussed above, this did not happen in *Rogers*.

In accord with the Court's opinion in *Rogers*, we hold that it is error to conduct, without the presence of the defendant, an in-chambers discussion with counsel for the government and the defendant about a substantive question with respect to its instructions sent out by a deliberating jury. *United States v. Harris*, 814 F.2d 155 (4th Cir.1987) (per curiam).[17] However, because Rhodes did not raise his claim of error until his second and third motions for a new trial, he must establish plain error under Fed. R.Crim.P. 52(b) for us to vacate his conviction.

Applying the *Olano* test, Rhodes's error is indeed error, and it is plain, *Rogers* having been decided some seven years before his trial. However, Rhodes cannot meet the third requirement that the error affected his substantial rights. Rhodes's argument is that he was prejudiced by his absence because he would have asked the district court to give the instruction apparently offered earlier by the Government, which the district court mentioned in discussing the jury's question. The answer that the district court gave to the jury's question was so patently legally correct that it is beyond argument. It also was the answer which Rhodes's counsel urged the district court to use. So it is obvious, and we hold, that Rhodes's absence from the in-chambers discussion did not af-fect his substantial rights. It was harmless beyond a reasonable doubt. We therefore find that the error was not of a type that may be corrected under Rule 52(b), and we do not vacate his conviction.

Rhodes's convictions are accordingly

*AFFIRMED.*

HAMILTON, Circuit Judge, concurring specially:

While I join in the court's opinion, I write separately to emphasize the great degree of care that must be taken by trial courts when admitting evidence of a defendant's prior felony conviction in a § 922(g) prosecution.

Usually, and for good reason, a defendant is willing to stipulate to the fact of his prior felony conviction. The nature and underlying circumstances of a defendant's prior felony conviction are obviously immaterial to the defendant's status as a convicted felon—it does not make the fact that a defendant is a convicted felon more or less probable. Rather, in most cases, the nature and underlying circumstances of the prior felony offense serve only to prejudice the defendant in that it will likely influence even the most conscientious juror's perception of the defendant. Stated differently, common sense teaches us that jurors are more inclined to convict defendants when they are aware that a defendant has committed prior felonies.[1] The prejudicial impact of such evidence is further exacerbated when the predicate felony in a

---

**17.** In *United States v. Head*, 697 F.2d 1200, 1213 (4th Cir.1982), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983), we relied on the procedures the Supreme Court outlined in *Rogers* and said that the procedure employed by the district court did not violate Rule 43 because the defendant's attorney was present and participated in the discussion, and, more importantly, the jury's question did not ask a substantive question or request additional instructions; rather, it informed the judge of the status of deliberations. Here, however, the jury's question dealt with a substantive matter. *Head* therefore does not control this case. No question was raised in *Head* of whether the response was made in open court, as there is none here. We express no opinion on that question. If a request for new trial may be so construed, the very substance and correctness of the reply made it harmless beyond a reasonable doubt. The instructions to the jury were all given in open court.

**1.** The Federal Rules of Evidence recognize this point by strongly disfavoring the introduction of prior crimes when they are not probative of the crimes charged. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); Fed.R.Evid. 609 (impeachment by prior crime only in certain instances); Fed.R.Evid. 403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" or where the evidence is unnecessarily cumulative).

§ 922(g) prosecution involves violence, especially firearms, *see United States v. Poore,* 594 F.2d 39, 41–42 (4th Cir.1979), and drugs. Accordingly, because it is in his or her best interest to do so, a defendant ordinarily should stipulate to the fact of the prior felony conviction.

*Poore* held that when a defendant offers to stipulate the fact of his prior felony conviction, evidence of the nature of the conviction is irrelevant and must be excluded.[2] The defendant, Poore, was charged with, among other things, possession of a weapon by a convicted felon. The indictment charging Poore with this offense revealed the nature of his prior felony, carrying a handgun. Poore contended that the indictment improperly contained the nature of the prior felony conviction and offered to, among other things, stipulate to the fact. In holding that the nature of Poore's prior felony should be stricken, we noted:

> The prejudice against appellant in permitting the jury to be apprised of the nature of Poore's prior felony conviction by the use of unnecessary language descriptive of that felony conviction contained in Count II is clear. The prior felony conviction was for "carrying a handgun," the same type of firearm offense with which appellant is being charged in this case. Despite the district court's precautionary instructions, we recognize that "to the layman's mind the defendant's criminal disposition is logically relevant to his guilt or his innocence of a specific crime." Therefore, we must conclude that it was not unlikely that the jury, being apprised of the fact that appellant had previously been convicted of a like firearms offense, considered that fact in passing on his guilt or innocence of the offenses charged in this case. Any such consideration, of course, would be improper.

*Id.* at 41–42 (citation and footnote omitted). However, *Poore* left unanswered a very im-portant question: whether, in the absence of a stipulation, the nature and underlying circumstances of a defendant's prior felony conviction are nevertheless admissible. *Id.* at 42 (" 'A different question would be presented if there was no offer to stipulate to the prior felony conviction, and the government was therefore forced to prove such conviction by reliance upon a prior judgment containing a statement of conviction inextricably interwoven with descriptive details of the offense. Indeed, if the defendant should not be willing to stipulate to the prior felony conviction, he could *require* the prosecution to prove such conviction by the prior record or judgment of conviction.' " (quoting *United States v. Kemper,* 503 F.2d 327, 329 and n. 3 (6th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975) (emphasis in original)).

In my view, Fed.R.Evid. 403 provides the guide to resolve the question left open in *Poore.* Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Under a proper application of Rule 403, it appears, even in the absence of a stipulation, the nature and underlying circumstances of the prior felony conviction should not be admitted, unless employed for proper impeachment purposes. *See, e.g., Tavares,* 21 F.3d at 4–6 (nature and underlying circumstances of prior felony conviction irrelevant); *United States v. Barker,* 1 F.3d 957, 959 n. 3 (9th Cir.1993) (underlying facts of prior conviction irrelevant); *United States v. Gilliam,* 994 F.2d 97, 103 (2d Cir.) (nature and underlying facts of prior felony conviction inadmissible), *cert. denied,* —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); *but see Breitkreutz,* 8 F.3d at 691 n. 4 ("[W]hile the underlying facts of the felony may not be

**2.** *Poore* is at odds with several circuit decisions which have held that the government is not required to accept the stipulation. *See, e.g., United States v. Tavares,* 21 F.3d 1, 5 (1st Cir.1994) (en banc); *United States v. Breitkreutz,* 8 F.3d 688, 692 (9th Cir.1993) (noting that prosecution has right to refuse stipulation).

relevant, the conviction judgment or other proof—which may state the nature of the conviction—most certainly is."). This approach appears to be eminently reasonable for it keeps extremely prejudicial evidence away from the jury, while, at the same time, it allows the government to meet its evidentiary burden through reliance on a properly redacted prior judgment or record, or circumscribed testimony, if necessary. In short, the prior judgment should not contain the nature or the underlying circumstances of the prior felony conviction under Rule 403 because it is unduly prejudicial and unrelated to the crimes for which the defendant is being tried.[3]

In summary, Rule 403 mandates that the government is not at liberty to engage in a free ranging exploration of a defendant's prior criminal history to satisfy its evidentiary burden in a § 922(g) prosecution and provides the proper guide in resolving issues that arise when the government is put to the task of proving the prior felony conviction in a § 922(g) prosecution.[4]

---

**3.** Also of note, proof of more than one conviction in a § 922(g) prosecution is generally viewed as unnecessary, cumulative, and prejudicial. *See, e.g., Breitkreutz,* 8 F.3d at 692; *United States v. Collamore,* 868 F.2d 24, 30 (1st Cir.1989) (18 U.S.C.App. § 1202(a) case); *United States v. Romero,* 603 F.2d 640, 641–42 (7th Cir.1979) (same). *But see, United States v. Bruton,* 647 F.2d 818, 824–25 (8th Cir.) (18 U.S.C.App. § 1202(a) case), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981); *United States v. Burkhart,* 545 F.2d 14, 15 (6th Cir.1976) (same).

**4.** In my view, the admission of the indictments describing in detail Rhodes' prior felonies (most significantly, that Rhodes' prior felonies involved firearms and the shooting of two victims), as well as a litany of offenses for which Rhodes had been charged but not convicted, the depositions summarizing the circumstances surrounding the commission of the crimes, Rhodes' sentencing transcript, and the testimony of Agent Swann—all extremely prejudicial—was error. A one page Certificate of Disposition (properly redacted) was all that the government needed to establish that Rhodes had a prior felony conviction. The Certificates of Disposition were each one page in length and completely severable from the remaining materials in Government's Exhibits 6 and 7.