UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 97-4499

RICHARD ALLEN WAGER,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Thomas A. Wiseman, Jr., Senior District Judge,
sitting by designation.
(CR-96-30)

Submitted: September 30, 1998

Decided: November 13, 1998

Before WILLIAMS and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard A. Culler, CULLER & CULLER, P.A., Charlotte, North Car-
olina, for Appellant. Mark T. Calloway, United States Attorney,
Brian L. Whisler, Assistant United States Attorney, David C. Keesler,
Assistant United States Attorney, Charlotte, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard Allen Wager appeals from his conviction following a jury trial for armed bank robbery, in violation of 18 U.S.C. § 2113(d) (1994). Wager was sentenced to 175 months imprisonment, five years supervised release, $17,374 restitution, and a $50 special assessment. Wager contends that the district court erred by: denying his motion to suppress the evidence seized from the wall safe in his hotel room and his confession, denying his motion for a new trial because the prosecutor allegedly improperly commented on his refusal to testify, providing a supplemental jury instruction outside of the defendant's presence, and awarding a two-level enhancement to his base offense level for obstruction of justice under U.S. Sentencing Guidelines Manual § 3C1.1 (1995). Finding no error, we affirm.

On January 23, 1996, Wager donned a ski mask and entered the Centura Bank in Charlotte, North Carolina. Wager approached a vacant teller window, and while displaying a firearm, ordered the teller to place money in a white grocery bag. The teller tripped the bank alarm and also placed a bundle of bills which contained an exploding dye pack into the bag. Wager left the bank, but while he was still in the parking lot, the dye pack in the bag exploded. Wager sped away, leaving some of the dye stained money behind.

On January 25, 1996, Charlotte vice officers responded to a tip from a confidential informant that illegal drug activity was being conducted in Room 207 of the Comfort Inn in Matthews, North Carolina. At approximately 9:00 p.m., two officers arrived at the Inn and knocked on the door of Room 207. The officers, displaying their badges, identified themselves and their purpose to Wager, who answered the door. Wager invited the officers into the room. Once inside the room, the officers immediately noticed on a table crack cocaine, marijuana, and a large amount of red dye-stained currency.

2

Present in the room at the time of the search was a woman and Wager's nephew, who initially locked himself in the bathroom. Wager was handcuffed for the officers' protection, but at that time, he was not under arrest. The officers asked for and received consent to search the room; the search revealed an additional bag of currency also stained with red dye. The officers then searched a locked wall safe in the room, where they found a BB pistol, a bag with more red dye-stained currency, and some pantyhose.

Wager was arrested for possession of drugs and drug paraphernalia. After Wager was taken into custody, FBI Agent Mark Rozzi and police officer Mike Sanders interviewed him. Wager was informed of his constitutional rights and signed a waiver-of-rights form. Wager confessed to the bank robbery and identified himself in writing on the back of a bank surveillance photograph depicting the robbery. The officers then asked for and received consent to search Wager's vehicle, where they found the black ski mask worn during the robbery.[1]

Wager contends that the district court erred in denying his motion to suppress the items found in the locked hotel room wall safe and his confession. He asserts that he did not validly consent to the search and the search was not a lawful search incident to arrest. Further, he contends that the subsequent confession was inadmissible as "fruit of the poisonous tree."

A police officer may conduct a search of an area without a warrant and without probable cause if the person in control of the area voluntarily consents to a search. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In determining whether consent is voluntary, the court should look to the totality of the circumstances. Id. at 227. Appropriate factors to consider include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). The government need not produce evidence that the defendant "knew of his right to refuse

_____

[1] The vehicle was titled to Wager's nephew, who signed a consent to search form to search the vehicle.

3

consent to prove that the consent was voluntary." Id. (citations omitted).

On motions to suppress evidence, this court reviews the factual findings under the clearly erroneous standard and reviews the legal conclusions de novo. See United States v. Rusher , 966 F.2d 868, 873 (4th Cir. 1992). Whether Wager voluntarily consented to the search of the wall safe in his hotel room is a factual question which is reviewed for clear error. See United States v. Elie, 111 F.3d 1135, 1144 (4th Cir. 1997).

The record supports the district court's finding that Wager voluntarily consented to the search of the room safe. As the district court found, Wager was coherent, able to understand what he was saying and doing and what the officers were saying to him. The officers testified that Wager did not stagger, slur his words, or appear to be trembling. Further, nothing in the conditions surrounding Wager's consent would render the consent involuntary. The incident was not of inordinate duration, the officers did not display their weapons, and Wager was handcuffed for the officers' safety and only after a third individual was found hiding in the bathroom. See Elie , 111 F.3d at 1145 (noting that handcuffing the accused does not in and of itself establish involuntariness of consent). Nothing in the record indicates that the environment was coercive or intimidating. In fact, the officers testified that Wager was very talkative and cooperative, and he engaged them in conversation. We therefore find that Wager voluntarily consented to the search of the room and the wall safe.

Moreover, we find no merit in Wager's contention that his confession was obtained in violation of his constitutional rights. Voluntariness of a confession is assessed by examining the totality of the circumstances surrounding the confession. See Mincey v. Arizona, 437 U.S. 385, 401 (1978); United States v. Braxton, 112 F.3d 777, 781 (4th Cir.) (in banc), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3260 (U.S. Oct. 6, 1997) (No. 97-5073). When determining the admissibility of a confession, we consider: (1) the delay between arrest and arraignment, (2) whether the defendant was advised of the nature of the charges against him, (3) whether he was informed of his right to remain silent and that his confession could be used against him, (4) whether he was informed of his right to counsel, and (5) whether

4

counsel was present when he gave the confession. See 18 U.S.C. § 3501(b) (1994).

Wager does not dispute that he signed a waiver-of-rights form. Rather, he contends that the confession was tainted fruit of the unlawful search of his hotel room and safe. After Wager was arrested he was taken to the Mecklenburg Law Enforcement Center where he was read his Miranda[2] rights and signed a waiver-of-rights form. Wager then proceeded to detail his involvement in the bank robbery. He was shown a surveillance photograph of the bank and not only signed and dated the back of the photograph indicating it was him, but he also wrote the statement "This is me, I didn't have a real gun." Further, based on the aforementioned finding that the search of the hotel room and wall safe were constitutional, Wager's contention that the search tainted his confession is unfounded. Based on the totality of the circumstances, we find that Wager's confession was voluntarily obtained and therefore admissible.

Next, Wager contends that the district court erred in denying his motion for a new trial because the prosecutor improperly commented on his refusal to testify in closing argument. During closing argument, the prosecutor stated:

> So you consider all the evidence, folks. Listen to anything Mr. Culler has to say. I submit to you beyond any reasonable doubt that this man is guilty as charged. Now, he wouldn't 'fess up to it, so I would ask you to assign responsibility for this act to him. Thanks.

(J.A. 506). Wager asserts that the improper comment on his refusal to accept responsibility for the offense placed a burden on him to present some evidence of his innocence. The judge gave the jury an extensive curative instruction. He told the jury that the defendant did not have to testify or present any evidence and that the prosecutor was required to prove all elements beyond a reasonable doubt. (J.A. 507).

The prosecutor is forbidden from commenting upon the defen-

_____

**2 Miranda v. Arizona**, 384 U.S. 436 (1966).

5

dant's silence at trial. See Griffin v. California, 380 U.S. 609, 613-14 (1965). "The test for determining whether an indirect remark constitutes improper comment on a defendant's failure to testify is: `Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" United States v. Whitehead, 618 F.2d 523, 527 (4th Cir. 1980) (emphasis omitted) (quoting United States v. Anderson, 481 F.2d 685, 701 (4th Cir. 1973), aff'd, 417 U.S. 211 (1974)). An impermissible comment on the defendant's refusal to testify requires reversal of the conviction unless the comment is harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967). We review the district court's denial of a motion for a new trial for an abuse of discretion. See United States v. Bynum, 3 F.3d 769, 773 (4th Cir. 1993).

From the record it appears that the prosecutor's comment was not intended as a comment on Wager's failure to testify, but was intended to ask the jury to hold the defendant accountable for the offense. Even if the prosecutor's statement could be considered to implicate Wager's decision not to testify, any error was harmless. See United States v. Hasting, 461 U.S. 499, 508 (1983). The evidence at trial was more than sufficient to support Wager's conviction, and the prosecutor's statement was so tangentially related to Wager's silence at trial that the jury would not have reached a different conclusion in the absence of the prosecutor's comment. Further, the district court immediately issued an appropriate curative instruction. Accordingly, the district court did not err in denying Wager's motion for a new trial.

Wager also contends that the district court violated Fed. R. Crim. P. 43 in responding to a question posed by the jury during its deliberations outside the presence of the defendant. Wager asserts that it is difficult to ascertain the effect the district court's response had on the jury; however, he contends that the result of the error is apparent since the jury came back with a guilty verdict within minutes of receiving the court's response. Because Wager did not object at trial, we review for plain error. See United States v. Olano, 507 U.S. 725, 732-36 (1993); United States v. Hastings, 134 F.3d 235, 239 (4th Cir.), cert. denied, ___ U.S. #6D6D 6D#, 66 U.S.L.W. 3758 (U.S. May 26, 1998) (No. 97-8732). To succeed on this claim, Wager must show

6

that an error occurred, that the error was plain, that the error affected his substantial rights, i.e., affected the outcome of the trial, and that the error affects the fairness or integrity of the trial. See Olano, 507 U.S. at 733-35.

Rule 43 provides that the defendant shall be present at every stage of the criminal proceedings. See Fed. R. Crim. P. 43(a); see also United States v. Camacho, 955 F.2d 950, 952-53 (4th Cir. 1992). The Supreme Court in Rogers v. United States, 422 U.S. 35, 39 (1975), explained that Rule 43 requires the trial court to notify defense counsel of requests from the jury for further instructions and to respond to such requests in open court. We have held that it is a technical violation of Rule 43 for a judge to respond to a question posed by the jury in the defendant's absence, but that such an error may be considered harmless. See United States v. Harris, 814 F.2d 155, 157 (4th Cir. 1987). Even assuming that Wager's right to be present was violated, reversal is not required unless the error affected his substantial rights. See Olano, 507 U.S. at 735.

The jury in the instant case posed the following question: "[s]hould intimidation be included in Count Two, second element, page 13?" (J.A. at 564). After discussing the jury's question with counsel, but outside the presence of the defendant, the district court noted that the court inadvertently omitted the language "or intimidation" from the charge. Defense counsel noted an exception, but did not object based on the defendant's absence. The district court thereafter instructed the jury accordingly.

We find that the district court's response to the jury's question outside the presence of the defendant was error, and it is plain. See United States v. Rhodes, 32 F.3d 867, 874 (4th Cir. 1994). We find, however, that because the district court's response to the jury's question was legally correct, Wager's absence from the discussion did not affect his substantial rights. See id. Thus, there was no plain error. See id.

Lastly, Wager contends that the district court erred in awarding a two-level enhancement under USSG § 3C1.1, for obstruction of justice. Wager asserts that the district court failed to make specific factual findings regarding his attempted escape from the Mecklenburg

7

County Jail while awaiting sentencing. Wager further asserts that the evidence presented to support the enhancement was insufficient.

We review the district court's factual findings that Wager obstructed justice for clear error. See United States v. Puckett, 61 F.3d 1092, 1095 (4th Cir. 1995). The district court's determination that particular conduct qualifies for the adjustment is reviewed de novo. See United States v. Saintil, 910 F.2d 1231, 1232 (4th Cir. 1990). If the defendant objects to an enhancement recommended in the presentence report (PSR), the district court must make an independent resolution of the factual issues raised by the objection. See USSG § 6A1.3 (1995). The trial court can do this either by a separate recitation of its findings as to the disputed matters or by express adoption of the findings contained in the PSR. See United States v. Morgan, 942 F.2d 243, 245 (4th Cir. 1991).

Section 3C1.1 provides for a two-level increase if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." USSG § 3C1.1. "A wide range of conduct falls within the parameters of this section." United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991). The commentary to USSG § 3C1.1 contains a non-exhaustive list of examples of the types of conduct covered by the guideline, including "escaping or attempting to escape from custody before trial or sentencing." USSG § 3C1.1, comment. (n.3(e)).

Wager's contention that the district court failed to make specific factual findings is without merit. The district court, in awarding the enhancement, explicitly adopted the findings contained in the PSR. See Morgan, 942 F.2d at 245. Further, we find that Wager's conduct constituted an attempted escape. While Wager was in custody awaiting sentencing, authorities were notified of a possible conspiracy among several inmates, including the defendant, to escape. The authorities searched Wager's cell and discovered a hacksaw, four sheets, and two blankets. The authorities also discovered that the bars on Wager's cell window had been almost completely sawed through. A laboratory analysis of Wager's jumpsuit and shoes revealed the presence of metallic shavings and paint fragments consistent with the cell bars that had been tampered with in Wager's cell. The district

8

court's finding that Wagner attempted to escape was not clearly erroneous.

Accordingly, we affirm Wager's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

<u>AFFIRMED</u>

9