Howard **PELLINGTON**, Petitioner,

v.

Charles **GREINER**, Respondent.

No. 03 Civ. 7220(VM).

United States District Court,
S.D. New York.

March 10, 2004.

14. Gourdine included a copy of the Contract as an exhibit to the Complaint.

Martin M. Lucente, The Legal Aid Society, Brooklyn, NY, for Petitioner.

### DECISION AND ORDER

MARRERO, District Judge.

Petitioner Howard Pellington ("Pellington") was convicted of murder in the second degree after trial in the Supreme

Court of the State of New York, Bronx County (the "State Court") in 1998, and is now serving an indeterminate term of imprisonment of between twenty years to life. During jury deliberations at the conclusion of the trial, the judge met privately with the jury forewoman, at the juror's request, to discuss the behavior of another juror. A court reporter and the attorneys for both sides were present at the meeting, but Pellington was not. In this petition for a writ of habeas corpus, Pellington argues that the judge's discussion with the juror in Pellington's absence deprived Pellington of his constitutional right to be present at all material states of proceedings against him. For the reasons set forth below, the Court denies Pellington's petition.

## I. BACKGROUND

Pellington was convicted for the murder of Michael Cruz on the night of January 3, 1995 in the Bronx. His conviction was based primarily on the testimony of the single witness to the incident, Eddie Aviles ("Aviles"). Aviles testified that he observed an argument between three men on a street corner and saw one of the men shoot the victim and then begin running in his direction. According to Aviles, when the shooter was approximately 20 feet away, Aviles recognized him as Pellington. Aviles stated that he knew Pellington because Pellington worked for a drug dealer from whom Aviles regularly purchased cocaine, and Aviles had seen Pellington almost daily in the month before the shooting. Much of the trial focused on Aviles's credibility due to his history of drug abuse, the possibly poor lighting at the scene, and Aviles's nine-month delay in coming forward to identify Pellington as the shooter.

At the conclusion of the first afternoon of jury deliberations, after the jury had been dismissed from the courtroom, the judge informed the parties in open court that the jury foreperson had told a court officer that she wanted to speak with the judge "about something that she didn't want to put into a note." (Trial transcript (Tr.), *People v. Pellington*, Ind. # 7708/95, N.Y. Sup.Ct., Bronx Cty, Crim. Term Part 27, April 1, 1998, at 630.) The court then stated, "[s]o what we have agreed, Mr. Katz,[1] am I correct, that we will talk to her in private with just the court reporter, court officer obviously and the attorneys, is that correct?" (Tr. 630.) Pellington's counsel replied "[f]ine." (*Id.*)

The court then held a private, on-the-record conference with the jury forewoman and the above-named individuals. Pellington did not attend the conference. At the meeting, the forewoman informed the court:

> Eleven of us [have] all come to a conclusion, there is one upstairs that he's taking it personally. He's not following the law that you gave us to go by. He's not listening to that. He's dismissing all this stuff you told us and a lot of facts that's there he's dismissing, everything. So a lot of jurors upstairs [are] getting upset because all 11 of us [are] agreeing except for him. I felt I needed to tell you that he's not really listening to what you said.

(Tr. 631–32.)

In response, the court asked the forewoman not to reveal the results of the deliberations and then stated:

> My thought is that I would take you all, send you to the hotel for the night that would give everybody an opportunity to step back from the case. Maybe I will try to address it in some fashion tomor-

**1.** Pellington's trial counsel.

row, but it should be through a note, I believe.

(Tr. 632.)

The court gave both attorneys an opportunity to weigh in on the appropriate response to the forewoman's statement. Pellington's counsel said that "the best thing is since they are planning on going to the hotel at this moment anyway that we allow the jury to go to the hotel. There's nothing to be accomplished at this point anyway[.]" (*Id.*) Before the meeting concluded, the forewoman repeated:

One more thing .... it's personal with [the juror in question], he's not going by the law you gave us to go by, that is not what he's going by. It makes it very hard for us to come to a conclusion because everybody is there, we have it all, it's just him, it's personal.

(Tr. 634.)

The court replied "[w]e will work on that tomorrow." (*Id.*)

The next morning, on the record and with Pellington present but outside the presence of the jury, the court referred to the meeting with the forewoman the previous evening:

We had a conference with one of the jurors in the robing room, and I'm not going to repeat the substance of that conversation, but the lawyers and I have discussed that just a few minutes ago and decided that at this point we're not going to respond to the things that she told us, and we'll wait and see how things develop; is that correct[?]

(Tr. 636.)

Both attorneys confirmed this plan.

The jury deliberated over the next three days. The deliberations included several readbacks of testimony, requests for clarification of charges, two reports of deadlock, and two *Allen* charges[2] from the court. The jury ultimately convicted Pellington of murder in the second degree.

Pellington appealed his conviction to the Supreme Court of New York, Appellate Division, First Department (the "Appellate Division"). He argued that the government had failed to prove his guilt beyond a reasonable doubt; that the government's use of peremptory challenges was pretextual and violated his right to equal protection; and that the meeting between the court, the jury forewoman, and counsel for both sides outside of Pellington's presence denied Pellington his right to be present at all stages of the proceedings against him. The Appellate Division affirmed the judgment. *See People v. Pellington,* 294 A.D.2d 197, 741 N.Y.S.2d 694 (1st Dep't 2002). The New York Court of Appeals denied Pellington leave to appeal. *See People v. Pellington,* 98 N.Y.2d 771, 752 N.Y.S.2d 11, 781 N.E.2d 923 (2002). Pellington then filed this petition for a writ of habeas corpus, in which he raises only the third of the arguments he submitted to the Appellate Division—the court's meeting with the jury foreperson.

## II. DISCUSSION

### A. STANDARD OF REVIEW FOR HABEAS PETITIONS

A federal district court may issue a writ of habeas corpus to a person who is in custody as a result of a state court conviction only if that custody violates the United States Constitution or federal laws or treaties. *See* 28 U.S.C. § 2254(a). If a state prisoner's claims were decided on the merits by a state court, § 2254(d)(1) permits this Court to grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

**2.** *See Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

United States." *See Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Eze v. Senkowski,* 321 F.3d 110, 121 (2d Cir.2003).

## B. *THE JUROR MEETING*

Pellington argues that the state court's meeting with the jury forewoman in the presence of the prosecutor, Pellington's counsel, and the court reporter deprived Pellington of his right to be present for all stages of the proceedings against him under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The State argues that Pellington waived his right to be present; that even if Pellington did not waive his right to be present, his absence did not deprive him of his right to be present for all material proceedings; and finally, that any error by the state court in holding the meeting without Pellington was harmless.

### 1. *Waiver*

 The due process clause of the Fourteenth Amendment to the Constitution guarantees a criminal defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). The defendant may waive his right to be present, provided that waiver is made knowingly and voluntarily. *See Clark v. Stinson,* 214 F.3d 315, 323 (2d Cir.2000). Such a waiver may be implied by a defendant's conduct. *See Cohen v. Senkowski,* 290 F.3d 485, 491 (2d Cir.2002); *Clark,* 214 F.3d at 323.

 Although a waiver must be knowing and voluntary, "only minimal knowledge on the part of the accused is required when waiver is implied from conduct." *Cohen,* 290 F.3d at 491 (quoting *United States v. Nichols,* 56 F.3d 403, 416 (2d Cir.1995)). The Second Circuit has stated that the proper inquiry to determine whether an implied waiver was made knowingly "is whether the trial court's actions in open court gave [the defendant] sufficient 'minimal' knowledge of the nature and purpose of the [proceeding] to conclude that he waived his right to be present when he did not attend." *Id.*

 In the case at bar, the court informed the parties and counsel in open court, outside the presence of the jury, that the foreperson wanted to speak to the court. The court then stated that the attorneys, the court reporter, and the court security officer would meet privately with the juror. Pellington's counsel consented to this arrangement. Although Pellington did not expressly or personally waive his right to attend the juror conference, neither Pellington nor his counsel objected to Pellington's absence from the conference with the court. The Supreme Court addressed a similar situation in *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), in which the trial court met privately, on the record, with a juror and defense counsel. The *Gagnon* Court ruled that the defendant waived his right to attend the meeting because:

> The district court need not get an express "on the record" waiver from the defendant for every trial conference which a defendant may have a right to attend. As we have noted previously, "[t]here is scarcely a lengthy trial in which one or more jurors does not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial." [*Rushen v. Spain,* 464 U.S. 114, 118, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) ]. A defendant knowing of such a discussion must as-

sert whatever right he may have under [Fed.R.Crim.P.] 43 to be present.

*Gagnon,* 470 U.S. at 528, 105 S.Ct. 1482.

Although the Appellate Division did not expressly rely on *Gagnon,* it ruled that Pellington, through his counsel, waived his right to be present at the juror meeting. *See Pellington,* 741 N.Y.S.2d at 694. Pellington's argument that his waiver was not made knowingly because he was unaware of the topic of the forewoman's statements is not persuasive. Pellington knew that the court intended to meet with the forewoman and the attorneys. Neither he nor his attorney objected to that arrangement, and his attorney expressly consented to it. On that basis, the Appellate Division's ruling that Pellington waived his right to be present was entirely reasonable.

### 2. *Harmless error*

■ Even if Pellington's waiver was not made knowingly and voluntarily, and even if Pellington had a constitutional right to be present at the meeting,[3] the Court has determined that any error the state court may have committed in holding the discussion without Pellington was harmless given the presence of Pellington's counsel at the conference.

There are two competing standards for determining whether an error at trial may be considered harmless. *See Brown v. Keane,* 355 F.3d 82, 91 (2d Cir.2004). Under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), on direct review of a criminal conviction a constitutional error at trial must be harmless beyond a reasonable doubt to avoid the reversal of a conviction. But under *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), on collateral review of a state criminal conviction in federal court, an error is harmless if it had no "substantial and injurious ef-

fect or influence in determining the jury's verdict." The Second Circuit has expressly declined to decide which standard to apply to a habeas review of a state conviction, because in the cases that have raised the issue the Circuit Court determined that the result would be the same under either test. *See Brown,* 355 F.3d at 91. For the same reason, the Court here declines to decide the applicable standard.

The Supreme Court has emphasized that "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error." *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). But the reference to and understanding of *"ex parte"* generally entails direct communications or meetings of which neither the defendant nor his counsel was informed or had an opportunity to participate or waive defendant's appearance. Accordingly, courts have repeatedly indicated that in most instances, the presence of defense counsel at a conference between a judge and juror adequately protects the defendant's interests.

In *United States v. Smith,* 230 F.3d 300 (7th Cir.2000), the Seventh Circuit held that the defendant's due process rights were not violated when the trial court held an in-chambers conference relating to a juror (absent the juror) with counsel for both sides but without the defendant. The circuit court stated that the defendant's "absence from the conference did not detract from his defense or in any way affect the fundamental fairness of the trial. The record shows that counsel adequately expressed [the defendant's] viewpoint in chambers, and does not suggest that the decision would have been any different had [the defendant] been present." *Id.* at 310.

---

**3.** In light of the Court's reasoning, the Court does not need to decide whether Pellington

had a constitutional right to attend the meeting.

Similarly, in *United States v. Rhodes*, 32 F.3d 867 (4th Cir.1994), the Fourth Circuit determined that the trial court erred in conducting an in-chambers discussion with counsel for both sides about how to respond to a juror's substantive question, but that such error was harmless because the trial court gave the proper answer as suggested by defense counsel. *See id.* at 874; *see also, United States v. Harris*, 814 F.2d 155 (4th Cir.1987).

In a recent decision, the Second Circuit ruled that a trial court erred in responding *ex parte* to a note from a deliberating jury without first informing counsel of the existence of the note. *See United States v. Mejia*, 356 F.3d 470 (2d Cir.2004). The court stressed the importance of allowing counsel to help shape a court's response to a note from a jury. *See id.* at 477. Similarly, in *United States v. Ronder*, 639 F.2d 931 (2d Cir.1981), the Second Circuit emphasized the need for a judge to consult with *counsel* before responding to a communication from a jury. Furthermore, in *Ronder* the court noted that "[o]n occasion the personal nature of a note or the risk of exacerbating tensions among jurors may make it appropriate to forgo reading the text of the note to the entire jury; in that event it may be appropriate to disclose the note to *counsel* in camera or even to make some redaction." *Id.* at 934 (emphasis added). There is no indication that if the court informs counsel of the communication from a juror and consults with counsel about the appropriate response, the court has nonetheless materially violated the defendant's constitutional rights by failing to also include him personally in the discussion, particularly when the defendant is aware of the conference and knows that his attorney is participating in the colloquy.

In the present case, Pellington argues that his absence from the meeting denied him the opportunity to resolve the problem of the lone juror who was the subject of the forewoman's complaint. He argues that because he did not attend the meeting, he "had no opportunity apparent on the record to suggest to his counsel or the court that this particular problem ... be addressed directly." (Petitioner's Memorandum of Law in Support of Petition for a Writ of Habeas Corpus (Pet.Mem.) at 24.) Pellington's argument is unpersuasive for several reasons. Pellington's counsel and the court agreed that the most effective means of dealing with the issue was to take a wait-and-see approach to the juror's behavior. The Court has no compelling ground to conclude that Pellington's presence at the meeting would have led to the adoption of a different approach.

Pellington's argument that his absence prevented him from asking his attorney or the court to address the problem is meritless. Nothing prevented Pellington from speaking with his attorney or with the court following the meeting or the next morning before deliberations resumed. Indeed, the court held a private conference with the attorneys the morning after the meeting with the forewoman to discuss again the best means of addressing the situation. There is no indication that Pellington was prevented from speaking to his counsel on this topic before this morning meeting, or that he was prevented from addressing the court directly. The Court therefore concludes that any error the state court may have committed in this case was harmless.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the petition of Howard Pellington for a writ of habeas corpus is denied.

The Clerk of Court is directed to close this case.