**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 94-5896

OLAWALE AKERE,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-94-174-A)

Argued: February 1, 1996

Decided: March 29, 1996

Before WIDENER and MURNAGHAN, Circuit Judges, and
DOUMAR, United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Durbin Hughes, IV, WADE, HUGHES, &
SMIRCINA, P.C., Alexandria, Virginia, for Appellant. Bernard James
Apperson, III, Assistant United States Attorney, Alexandria, Virginia,
for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney,
Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Olawale Akere was convicted by a jury of one count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. On appeal, he challenges the district court's finding that he voluntarily absented himself from a portion of the trial, and the drug quantity attributed to him for sentencing purposes. We affirm both the conviction and the sentence.

I.

Akere was involved in a conspiracy in which he supplied heroin over a period of years to Dwayne Jackson, a heroin distributor in the Washington, D.C. metropolitan area, including Northern Virginia. Akere was based in New York City, and traveled to Washington on a regular basis to supply Jackson in the late 1980s and early 1990s. Jackson, who was named in the same indictment as Akere, and a middleman, Bobby Smith, pled guilty to various charges, and then testified against Akere at trial.

After three days of testimony, a jury returned a conviction on September 1, 1994. At sentencing, the district judge determined that Akere was accountable for 14.4 kilograms of heroin pursuant to the drug quantity table in United States Sentencing Commission, Guidelines Manual (USSG), § 2D1.1 (Nov. 1994). The resulting Guideline range determined by the court was 188 to 235 months. The district court sentenced Akere at the low end of the range, 188 months, followed by five years of supervised release. The court also ordered him to pay a mandatory special assessment of $50. Akere timely filed an appeal on November 22, 1994, challenging both his conviction and his sentence.

II.

A.

On August 31, 1994, while the jury was deliberating and without permission of the court, defendant left the courthouse. It is now indicated that he may have left for the purpose of going to a nearby pharmacy to obtain medication for his children. While on this errand, defendant allegedly was struck by a car and then taken to a local hospital.[1]

Not knowing defendant's whereabouts, that evening counsel appeared in chambers before Chief District Judge James Cacheris, who ordered defendant's bond revoked and issued a warrant for his arrest. The next day, September 1, 1994, the jury requested a re-instruction on the elements of conspiracy. Defendant was then at the hospital, and agents were there with him. Counsel and the court discussed what would be said to the jury about defendant's absence. During this discussion, the court said:

> He had no permission to leave here for an errand. I didn't excuse anyone to leave while this Court was in session . . . I find that [his absence was voluntary]. I did not excuse him, and he was expected to be here. He voluntarily went off on some mission of his own . . . you [defense counsel] haven't represented any legitimate reason [for defendant's departure], but he didn't seek any excuse from me to leave. The trial was going on, and I will make that finding and have made that finding. Now the only question is, what do you want me to tell this jury?

Joint Appendix 667-68 (hereafter "J.A.").

─────────────────────────────────────────────

[1] There is no evidence in the record that defendant Akere was in fact struck by a car. Nor does the record contain the hospital records that would reflect the injury allegedly suffered by defendant. Counsel for the United States suggested at oral argument that the claim that Akere was struck by a car was "dubious." We need not resolve this dispute, because it does not affect the analysis.

3

Defense counsel objected to the characterization that defendant's absence was voluntary, and then requested that, given the alternatives, the jury be "informed that [defendant] has waived his presence for the purpose of this question." (J.A. 668). That was the statement made to the jury by the Court:

> The defendant, Mr. Akere, has waived his presence for the purpose of this question that you have.

(J.A. 669.) Although the original jury instructions are not contained in the record before this court, counsel for defendant conceded at oral argument that the district court delivered the same instruction it had originally given to the jury regarding the elements of conspiracy.

Defendant did not miss any other portion of the trial. Counsel for defendant argued in his brief that defendant was also absent for the rendering of the jury verdict. This contention is contradicted by the record. When the jury returned, the Clerk asked the jury whether it had reached a verdict. While the Court examined the verdict, the Clerk stated "Will Defendant Akere please rise." (J.A. 674). Moments later, the Court stated: "You are in the custody of the Marshal, Mr. Akere." (J.A. 677). Thus, both the presiding judge and the clerk, individually, addressed the defendant on the record. Quite obviously, they would not have done so unless he had been present at that time.

B.

A trial court's decision to proceed without a defendant is reviewed under an abuse of discretion standard, and its factual finding that defendant was voluntarily absent will not be disturbed unless clearly erroneous. United States v. Camacho, 955 F.2d 950, 953 (4th Cir. 1992). An erroneous finding that defendant was voluntarily absent is subject to harmless error analysis. United States v. Harris, 814 F.2d 155, 157 (4th Cir. 1987).

C.

A criminal defendant has a right to be present at all stages of the trial. This right is based in both the Constitution and the Federal

4

Rules. The Sixth Amendment requires the defendant's presence when testimony is presented against him, and the right has also been extended under the Due Process Clause to be present "at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n.15 (1975).

Federal Rule of Criminal Procedure 43 also gives a defendant an explicit right to be present. It provides, in pertinent part, as follows:[2]

> **(a) Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
>
> **(b) Continued Presence Not Required.** The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
>
> (1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during trial).

(emphasis added). At its writing, Rule 43 was intended to be a "restatement of existing law." Fed. R. Crim. P. 43, 1944 advisory committee's notes, ¶ 1. It "has traditionally been understood to codify both a defendant's constitutional right and his common law right to presence." United States v. Camacho, 955 F.2d 950, 953 (4th Cir. 1992). Rule 43 is clear that a defendant may not be tried in absentia if he is missing at the beginning of trial, Crosby v. United States, 113 S.Ct. 748, 753 (1993), but once trial commences, the court may proceed without defendant if he leaves voluntarily.

_____

**2** The rule is set forth as it stood at the time of trial. It has since been amended. The amendment has no effect on this case.

The right to be present at trial cannot be deemed to have been waived merely because the defendant is not present when he should have been. A court should inquire as to a defendant's whereabouts. "The Court should try to find out where the defendant is and why he is absent, and should consider the likelihood the trial could soon proceed with the defendant, the difficulty of rescheduling, and the burden on the government." United States v. Rogers , 853 F.2d 249, 252 (4th Cir.), cert. denied, 488 U.S. 946 (1988).

We cannot say that the trial court's finding regarding the voluntary nature of defendant's absence was clearly erroneous. **3** Regardless of whether defendant was informed of his obligation to remain -- Rule 43 expressly provides that such notice is not relevant -- the critical question is whether defendant chose to absent himself.

To be sure, once Akere left the courthouse, he presumably did not "choose" to be hit by a car and hospitalized (assuming this did in fact occur). But the assessment of whether a defendant is"voluntarily" absent cannot turn on the ill fate that befalls a defendant once he chooses to leave. Rather, the determination of "voluntariness" must depend on the circumstances surrounding defendant's decision to leave in the first instance. The record is uncontradicted that defendant walked out of the courthouse, and absented himself from trial while the jury was sitting. There is no suggestion that defendant was coerced into making that choice.

Nor can we say that the court's decision to proceed without the defendant was improper. Although the court below did not mechanically apply all the factors set forth in Rogers , it did inquire about defendant's absence, and determined that he was then in the hospital. Obviously, at that stage in the proceedings, with the jury already retired, the court had to weigh the interests of interrupting the jury deliberations against the defendant's right to be present at the jury

_____

**3** There is some dispute in the factual presentation by the parties about whether the Court was in recess for lunch, see Def. Br. at 4, or merely in the midst of jury deliberations. See Govt. Br. at 3. The district judge stated that the court was "in session" at the time defendant left the courthouse. (J.A. 668). That statement of the court resolves the dispute.

6

reinstruction. We cannot say that the court's conclusion was an abuse of discretion.

Moreover, any possible error was harmless. Defendant was absent for one jury question. The district judge responded by giving the same instruction on the elements of conspiracy that he had previously given. (J.A. 670-73). The jury was told that defendant had waived his right to be present, and, significantly, was not told that he was voluntarily absent. We are convinced that defendant's absence from this brief proceeding, in which the district judge reiterated what he had previously told the jury in the defendant's presence, was harmless. See United States v. Rogers, 853 F.2d 249, 251-52 (4th Cir.), cert. denied, 488 U.S. 946 (1988) (harmless error where defendant absent for trial testimony in light of curative measures taken by district court); United States v. Arriagada, 451 F.2d 487, 489 (4th Cir. 1971), cert. denied, 405 U.S. 1018 (1972) (harmless error where court responded to jury query about instructions with a written response -- without advising counsel or defendant in advance-- that conformed to prior instructions).

III.

Akere also challenges the trial court's finding that 14.4 kilograms of heroin should be attributed to defendant for sentencing purposes. The drug quantity is a factor in determining the offense level under the Guidelines. It bears emphasis that the offense level determined here (level 36) is triggered by at least 10 kilograms of heroin. USSG § 2D1.1(c)(2). We review this finding for clear error. 18 U.S.C. § 3742(e); United States v. Williams, 977 F.2d 866, 869 (4th Cir. 1992).

Thus, the determination here is whether the trial court erred in finding that there was at least 10 kilograms of heroin attributable to defendant.

A.

The trial court's finding was based largely on the testimony of Bobby Smith, a cooperating witness in the case to whom defendant

supplied heroin (Smith then supplied it to Dwayne Jackson, a distributor in the Washington, D.C. area). Smith testified at trial that defendant Akere supplied him with 200 grams of heroin two or three times per month, during a period from early 1988 through May, 1991. (J.A. 58-59, 62-63). In the Presentence Report, the Probation Officer gave the defendant the benefit of the doubt, by conservatively calculating the drug quantity based on deliveries of twice a month over a period of 36 months. This yielded a total of 14.4 kilograms,[4] resulting in a base offense level of 36 under the Guidelines.

B.

The Sentencing Guidelines provide that in conspiracy cases, as this is, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" shall be imputed to defendant. USSG § 1B1.3(a)(1)(B); United States v. Vinson, 886 F.2d 740, 742 (4th Cir. 1989). The focus is on activities that are "reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." USSG § 1B1.3, comment. (n.2); United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993).

We have carefully reviewed the record, and find that there is ample evidence to support the district court's finding that there was at least 10 kilograms of heroin attributable to the defendant. There was considerable testimony, both by Bobby Smith and Dwayne Jackson, about the numerous instances in which Akere supplied heroin to his co-conspirators. Even if Akere supplied Smith on a monthly basis for just 24 months -- the defendant disputed the duration of these supply missions -- that would be sufficient for a finding of 9,600 grams, or 9.6 kilograms. Combined with other testimony of specific instances, see J.A. 51-53 (200 grams), 55-56 (1.5 kilograms), 243-245 (500 grams), the quantity attributable to Akere easily exceeds 10 kilograms of heroin. In addition, Dwayne Jackson, who distributed the heroin, testified that Akere was frequently bringing "500 grams or more" on his regular visits to Smith's apartment. (J.A. 247-48). Finally, there was evidence that defendant was aware that Jackson was "cutting" the heroin and mixing it with other substances -- thus increasing the

_____

[4] The calculation is as follows: 400 grams x 36 = 14,400 grams or 14.4 kilograms.

8

weight of the drugs. (J.A. 59). Under the Sentencing Guidelines, the weight of the drugs includes the "entire weight of any mixture." USSG § 2D1.1 (Notes to Drug Quantity Table, <u>Guidelines Manual</u> at 85).

We cannot say that the district court's finding was clearly erroneous. We therefore affirm the sentence imposed.

IV.

Because we find no reversible error, we affirm both the conviction and the sentence of defendant Akere.

<u>AFFIRMED</u>

9