**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alejandro CAMACHO, Jr.,
Defendant–Appellant.**

**No. 91–5523.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1991.
Decided Feb. 5, 1992.

Glenn Lowell Clayton, Clayton, Wilcox & Vergara, Burke, Va., argued, for defendant-appellant.

John Thomas Martin, Asst. U.S. Atty., Alexandria, Va., argued (Kenneth E. Melson, U.S. Atty., Alexandria, Va., Steven G. Bonorris, Sp. Asst. U.S. Atty., U.S. Dept. of Treasury, Washington, D.C., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Defendant Alejandro Camacho, Jr. was found guilty in the Eastern District of Virginia of bank embezzlement and bank fraud. Camacho appeals his conviction on the ground that the district court improperly commenced trial in his absence. We agree and therefore vacate Camacho's convictions and remand for a new trial.

### I.

Camacho worked in the bank card security department of the First American Bank of Virginia in 1989. He was indicted on October 17, 1990 on one count of bank embezzlement, in violation of 18 U.S.C. § 656, and fourteen counts of bank fraud, in violation of 18 U.S.C. § 1344. The indictment alleged that Camacho obtained possession of credit cards that had been returned to the bank for various reasons, obtained the personal identification numbers for those returned cards, and withdrew money from First American Bank by using the cards at various automatic teller machines throughout Northern Virginia. The total amount that Camacho allegedly withdrew was $57,500.

The district court, then Chief Judge Albert V. Bryan, Jr., convened court for the trial of Camacho's case at 10:04 a.m. on January 7, 1991 in Alexandria, Virginia. Camacho was not present. His counsel stated to the court that he expected Camacho, who lived in Reston, Virginia, to arrive, but that he was probably delayed because of the snow that was falling that morning. The following colloquy ensued:

THE COURT: The weather this morning isn't all that bad. We have got a lot of other people that were here.

MR. CLAYTON (Camacho's counsel): I can personally attest that since I'm also from outside the beltway, that it's a little harder snowing out there than it is here.

THE COURT: Would counsel approach the Bench.

(Bench Conference). I am really not impressed with this. This is the most important day of this man's life. The snow didn't come on us by surprise. When were you to meet him here?

MR. CLAYTON: 9:00 o'clock, Judge.

THE COURT: Has he called?

MR. CLAYTON: No sir, although I haven't really tried to call him either....

MR. MARTIN (Assistant United States Attorney): He is on personal recognizance bond, Your Honor. He hasn't missed anything up until now. He came in voluntarily for indictment.

THE COURT: I will take a short recess, but if he is not here in the next five or ten minutes, we are going on without him.

\* \* \* \* \* \*

Members of the jury, we are going to give the defendant a little more time to get here given the weather conditions, which may be delaying him. Since it is a criminal case, we can't at this stage, or I am not willing to go on without him. So we will take a short recess.

The court recessed for fifteen minutes. When court reconvened, the court asked Attorney Clayton whether Camacho had called. Clayton responded that Camacho had not, but that he was probably en route and did not have a telephone in his car. The court then stated that "[g]iven the number of other people who got here, I am

unwilling to wait any longer." The court then began impaneling the jury.

During *voir dire*, in Camacho's absence, the court asked the venire: "Have you or any member of your immediate family ever been the victim of a crime or participated in a criminal case as a witness for the Government or in any other capacity?" Apparently one venireperson nodded or raised his or her hand, but the court did not notice. The court went on to ask five unrelated questions. Camacho's counsel at that point mentioned that at least one venireperson had responded to the original question, and the government's attorney agreed. The court then restated the question, leaving out, however, the clause about a family member participating in a criminal case. Gloria Carres, among others, responded affirmatively to this question, stating that she had been the victim of a robbery but that it would not affect her impartiality. She was eventually selected as a juror. The government then called its first witness, Rhonda Watson. Following her testimony, another witness stated in a note that juror Carres had failed to advise the court of the criminal convictions of her two children, one of whom had been convicted of bank embezzlement.

After the court questioned that witness about juror Carres, Camacho arrived, fifty minutes after trial began. The court then questioned Carres out of the presence of the other jurors. She first denied that one of her family members had been involved in bank embezzlement, but then admitted that her daughter was convicted of this offense and that her son had had problems with the law. The court asked Carres if she could still be impartial, and she responded that "I don't think it would bother me. But it is up to you." The court suggested that the parties continue with eleven jurors, but Camacho declined to do so. The court then allowed trial to continue with all twelve jurors and denied Camacho's motion for a mistrial.

Immediately thereafter, the court received a note from juror Carol Perkins stating that witness Timothy Brosan was a personal friend of hers, but that it would not affect her impartiality. The court noted that it had not asked nor had counsel requested that it ask if any of the venire knew any of the witnesses. Brosan was not a bank employee when Camacho worked at First American, but he was the government's main witness. Camacho made a second motion for mistrial, which the court denied.

After two days of testimony, the jury rendered guilty verdicts on all counts. On March 8, 1991, the court sentenced Camacho to twenty-four months' imprisonment followed by three years of active probation on each count, all counts to run concurrently, and ordered Camacho to pay full restitution to the bank. Camacho timely appealed his conviction.

## II.

Camacho argues three points on appeal. First, he argues, the court abused its discretion by commencing trial in his absence. We agree with this contention. We therefore do not consider his other two arguments, that the court erred in not granting Camacho's motions for mistrial because juror Carres allegedly misrepresented her children's criminal history and juror Perkins knew a key government witness, and that the government's evidence was not sufficient to support a guilty verdict.

## A.

An accused has the right to be present at his own trial, including the impaneling of the jury, for two basic reasons. First, the right is constitutionally protected. The Confrontation Clause of the Sixth Amendment to the United States Constitution requires the defendant's presence when testimony is presented against him. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Also, as the Supreme Court has stated, the right to be present is "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam). An accused "has a [constitutional] right to

be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975). A defendant's absence during the impaneling of the jury certainly frustrates the fairness of the trial. *See United States v. Gordon,* 829 F.2d 119, 123–24 (D.C.Cir.1987). The absent defendant is denied the opportunity to give advice or suggestions to his lawyer concerning potential jurors. *See Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). A defendant's presence is also necessary so that he may effectively exercise his peremptory challenges, *United States v. Washington,* 705 F.2d 489, 497 (D.C.Cir.1983), a process that is essential to an impartial trial. *Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892).

Second, Federal Rule of Criminal Procedure 43(a) gives a defendant an explicit right to be present "at every stage of the trial including the impaneling of the jury." [1] Rule 43, as originally promulgated, was intended to be "a restatement of existing law." Fed.R.Crim.P. 43, 1944 Advisory Committee Note, Para. 1 (citing *Lewis,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892); *Diaz v. United States,* 223 U.S. 442, 455, 32 S.Ct. 250, 253–54, 56 L.Ed. 500 (1912)). Thus, Rule 43 has traditionally been understood to codify both a defendant's constitutional right and his common law right to presence. Accordingly, its "protective scope" is broader than the constitutional right alone. *United States v. Alessandrello,* 637 F.2d 131, 138 (3d Cir.1980), *cert. denied,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981); *United States v. Gregorio,* 497 F.2d 1253, 1257–59 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974).

Camacho therefore had a right to be present at trial during the impaneling of the jury and during the direct testimony that was offered against him. "[C]onvening a criminal tribunal without the presence of the defendant treads precariously close to the concept of trial *in absentia* which our system has long disdained." *United States v. Alikpo,* 944 F.2d 206, 209 (5th Cir.1991). The fact that Camacho had a right to be present, however, does not end our inquiry, for we must determine whether the district court was correct in assuming that Camacho voluntarily waived his right.

### B.

■ A defendant may waive his constitutional right to be present at his own trial. *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam). In addition, Rule 43 explicitly provides that trial may continue without the defendant when he "is voluntarily absent after trial has commenced." Fed.R.Crim.P. 43(b).[2] According to this court, a defendant's "voluntary absence without compelling justification ... constitutes a waiver of the right to be present." *United States v. Rogers,* 853 F.2d 249, 251–52 (4th Cir.), *cert. denied,* 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988) (citing *United States v. Peterson,* 524 F.2d 167, 184–85 (4th Cir.1975), *cert. denied,* 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976)).

■ We review a decision of the district court to proceed with a trial when the defendant is absent under an abuse of discretion standard, and the district court's factual findings will not be disturbed unless clearly erroneous. First, we review whether the district court properly exer-

---

**1.** Rule 43, Presence of the Defendant, in pertinent part, states:

(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

**2.** Rule 43(b) provides, in pertinent part:

(b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

(1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)....

cised its discretion in finding that the defendant knowingly and voluntarily waived the right to be present. *See Rogers*, 853 F.2d at 252. If the court properly found the right to be waived, we next consider whether the district court abused its discretion in concluding that there was on balance a controlling public interest to continue the trial in the defendant's absence. *See id.* ("[t]ypically, these factors will favor proceeding without the defendant in multi-defendant trials only"); *United States v. Muzevsky*, 760 F.2d 83, 85 (4th Cir.1985). Finally, if the district court was in error in finding voluntary waiver or in continuing the trial in defendant's absence, we ask whether that error was harmless. *See Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975) ("a violation of Rule 43 may in some circumstances be harmless error"); *Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); Fed.R.Crim.P. 52(a).

As we have stated, "[t]he right, however, 'cannot cursorily, and without inquiry, be deemed by the trial court to have been waived simply because the accused is not present when he should have been.'" *United States v. Rogers*, 853 F.2d 249, 252 (4th Cir.1988) (quoting *United States v. Beltran–Nunez*, 716 F.2d 287, 291 (5th Cir. 1983)). Rather, "[t]he court should try to find out where the defendant is and why he is absent." *Id.* In *Rogers*, the defendant was absent at the beginning of the second day of trial for fifty minutes. The trial court asked the defendant's attorney why the defendant was absent, the attorney stated that he did not know, and the court started without the defendant. We held that the court abused its discretion by proceeding without further investigation. *Id.*

█ In the case at bar, the court below did conduct a marginally more extensive investigation than the court did in *Rogers*. It found out that Camacho was supposed to meet his counsel at 9:00 and had not called counsel or apparently the court. The court noted that others had arrived on time that day despite the weather. It then took a fifteen minute recess, presumably for Camacho to arrive or call, before beginning the trial. Since it was the first day of trial, the court had more reason to be suspicious that Camacho had absconded than the court did in *Rogers*, where the defendant was absent at the beginning of the second day of trial, having arrived on time the first day. *See United States v. Schocket*, 753 F.2d 336, 339–40 (4th Cir.1985) (finding defendant voluntarily absent when he never arrived at trial; defendant had fled to Florida).

However, we hold that the court below did abuse its discretion in determining, on the facts before it, that Camacho had voluntarily absented himself from trial. As the court itself indicated to the jury in stating its reasons for taking a short recess, the probable reason that Camacho was late was the snowstorm that was occurring at the time. At 2:30 that afternoon, the court stated that the trial would not run late because of the weather. In addition, as the government candidly stated at oral argument before this court, some of the government witnesses did not make it to trial that day because of the weather. Furthermore, as the government stated to the district court, Camacho had not missed any court appearances before the trial; in fact, he had attended a motions hearing just three days before trial. The supposition of Camacho's counsel that Camacho did not call because he did not have a car phone and was en route was a very plausible interpretation of the events. While we review the court's decision based on what it knew or should have known at the time, we note that counsel's explanation was borne out when Camacho arrived fifty minutes after trial began. Counsel confirmed for the record that Camacho had left his home at 7:30 or 7:45 that morning but had run into significant traffic problems on the way to court. This is one of those cases in which "a short postponement of the trial might [have] prevent[ed] the need to try an absent defendant." *United States v. Muzevsky*, 760 F.2d 83, 85 (4th Cir.1985).

In its statements from the bench, the court below seemed to determine that even if Camacho was late because of the bad

weather, it would still deem Camacho to have knowingly and voluntarily waived his right to be present. We disagree. As the Supreme Court has stated, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and ... we 'do not presume acquiescence in the loss of fundamental rights.' " *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (quoting *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1936), and *Ohio Bell Tel. Co. v. Public Util. Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 731–32, 81 L.Ed. 1093 (1937)). This case is entirely unlike *United States v. Peterson,* 524 F.2d 167 (4th Cir.1975), where we held that a defendant who had absconded had voluntarily waived his right to be present at his trial. Counsel in that case had advised defendant four times the day before trial of the importance of appearing in court the following day and even arranged to meet him to transport him to court. Defendant did not appear at either the appointed meeting place or at court, and neither the court's nor counsel's efforts to locate him were successful. Defendant, once rearrested several months after trial, offered no excuse for his absence. *Id.* at 183. Here, by contrast, Camacho did not voluntarily waive his right to be present; he intended to arrive at court on time but was late because of the snow.

In a case similar to this one, the Second Circuit Court of Appeals held that a defendant who telephoned the court clerk the morning that trial commenced to advise that he was having car trouble and would be delayed in his arrival did not knowingly and voluntarily waive his right to be present. *See United States v. Mackey,* 915 F.2d 69, 73 (2d Cir.1990). In the case at bar, there is even less reason to find voluntary waiver than in *Mackey.* Here, there was a serious snowstorm that prevented several government witnesses from attending the trial. While Camacho could have left home even earlier than he did, and we do not condone the fact that he did not, he left home well before trial was to begin. It was not surprising that he did not call at that time, since he apparently did not know

he would be late, nor is it surprising that he did not call once it became clear that he would be late, since he apparently did not have a telephone in his car and leaving the highway to find a telephone would only have postponed his arrival. In this case, the weather-caused traffic delay precluded Camacho's absence from being considered sufficiently knowing and voluntary to constitute a valid waiver of his constitutional right to be present at his own trial.

Because we hold that the district court abused its discretion in finding that Camacho voluntarily absented himself from trial, we need not consider whether the court abused its discretion in commencing the trial without Camacho even if his absence were voluntary. We proceed directly to our final inquiry, whether erroneously proceeding to trial in Camacho's absence constituted harmless error.

### C.

■ The decision below should only stand if, viewing the entire record, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict absent the allegedly harmless error. *Alston v. Garrison,* 720 F.2d 812, 817 (4th Cir.1983), *cert. denied,* 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984) (citing *United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980–81, 76 L.Ed.2d 96 (1983)). This judgment may stand only if there is no reasonable possibility that the practice complained of might have contributed to the conviction. *Hasting,* 461 U.S. at 506, 103 S.Ct. at 1979.

Camacho contended at oral argument that without an effective waiver, a defendant's complete absence from *voir dire* "can never be treated as harmless error." *United States v. Crutcher,* 405 F.2d 239, 244 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). We are in accord with the District of Columbia Circuit Court of Appeals' treatment of this issue: "We need not, however, decide whether such error can *ever* be harmless; it is enough to find on the facts of this case that it was not." *United States v. Gordon,* 829 F.2d 119, 127 (D.C.Cir.

1987); *accord United States v. Mackey*, 915 F.2d 69, 74 (2d Cir.1990).

We therefore consider Camacho's second argument, that on the facts of this case, the error was not harmless beyond a reasonable doubt. Camacho was absent during the *voir dire*, both sides' opening statements, the testimony of the government's first witness, and part of the discussion about whether to excuse juror Carres because of her children's criminal records. The most serious problem was Camacho's absence during *voir dire*. In the cases in which a defendant's absence during the jury selection process was deemed harmless, the defendant was absent from only a small portion of the jury selection process. *See Gordon*, 829 F.2d at 127–28 (discussing cases). No case, so far as we are aware, has held that a defendant's absence from the entire jury selection process constituted harmless error. Here, Camacho did miss all of jury selection. "He observed not a single prospective juror, heard not a single response to the court's questions concerning personal and general matters, and participated in not a single peremptory challenge." *Id.* at 128.

We do not know what Camacho could have contributed during the jury selection process. However,

> [i]t is of the utmost importance that the defendant be present when the jury is being selected.... [T]he defendant has unique knowledge which is important at all stages of the trial, including *voir dire*. At the *voir dire* he may, for example, identify prospective jurors that he knows. He may also have knowledge of facts about himself or the alleged crime which may not have seemed relevant to him in the tranquility of his lawyer's office, and thus may not have been disclosed, but which may become important

as the individual prejudices or inclinations of the jurors are revealed. He may also be a member of the community in which he will be tried and might be sensitive to particular local prejudices his lawyer does not know about.

*United States v. Alessandrello*, 637 F.2d 131, 151 (3rd Cir.1980) (Higginbotham, J., dissenting) (decision holding that brief absence from *voir dire* was harmless error); *see also United States v. Alikpo*, 944 F.2d 206 (5th Cir.1991) (holding defendant's absence during most of questioning of jurors not harmless error even though defendant was present during exercise of peremptory challenges). Camacho might well have formed impressions of individual jurors that would have resulted in a different exercise of his peremptory challenges. *See Mackey*, 915 F.2d at 74; *Lewis v. United States*, 146 U.S. 370, 376, 13 S.Ct. 136, 138–39, 36 L.Ed. 1011 (1892) (absence from jury selection process prejudicial because it denies defendant his prerogative to challenge juror simply on basis of "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another"). Camacho also argues that his participation might have kept juror Carres off the jury through a challenge for cause or at least through a peremptory challenge. Camacho could have pointed out to his counsel that the court failed to ask the second time whether any potential jurors' family members had participated in a criminal case after a juror had indicated "yes" to that question the first time it was asked. It is likely that Carres had developed strong opinions about the crime of bank embezzlement because of her daughter's conviction of this offense, and it is not certain beyond a reasonable doubt that these opinions did not redound against Camacho in this case.[3]

---

3. The government argues that the Supreme Court's decision in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), requires that we find any error in Camacho's absence from *voir dire* to be harmless. We disagree. The Court in *Ross* held that the trial court's erroneous refusal to remove a juror favoring the death penalty that forced the capital defendant to use a peremptory challenge did not

violate the defendant's right to an impartial jury or to due process. According to the Court:

> Any claim that the jury was not impartial, therefore, must focus not on [the peremptorily-challenged juror favoring the death penalty,] Huling, but on the jurors who ultimately sat. None of those 12 jurors, however, was challenged for cause by petitioner, and he has never suggested that any of the 12 was not impartial.

In addition, the jurors probably wondered where Camacho was during his absence from the courtroom and may have drawn negative inferences about him as a result. *See Alikpo,* 944 F.2d at 210–11; *Wade v. United States,* 441 F.2d 1046, 1050 (D.C.Cir.1971). In sum, we are not convinced beyond a reasonable doubt that Camacho is wrong in claiming prejudice from his absence during the jury selection process.

Moreover, Camacho also missed the opening statements, direct testimony from one government witness, and the beginning of the discussion about juror Carres. While none of these events may have resulted in prejudicial error by itself, *see United States v. Rogers,* 853 F.2d 249, 252–53 (4th Cir.1988), in combination with Camacho's absence during *voir dire,* we are unable to conclude that there was no reasonable possibility of prejudice. The burden of proving harmless error is a difficult one, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and the government has not met it in this case.

### III.

We conclude that Camacho had a constitutional and statutory right to be present at his trial, including the impaneling of the jury. In addition, the district court abused its discretion in finding that Camacho voluntarily waived his right to be present. Finally, Camacho's absence was not harmless beyond a reasonable doubt. Camacho's convictions are therefore vacated and the case is remanded for further proceedings in accordance with this opinion.

VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

*Id.* at 86, 108 S.Ct. at 2277. In the case at bar, however, Camacho does suggest that two of the jurors who did sit were not impartial, Carres and Perkins. He also argues that he might have challenged juror Carres for cause had he been present. Therefore *Ross* is inapposite to this case.