**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4212

TROY ROLLE, a/k/a Robert Stan
Marks,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Henry M. Herlong Jr., District Judge.
(CR-97-608)

Argued: October 29, 1999

Decided: February 14, 2000

Before MOTZ, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Motz and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Linda S. Sheffield, Decatur, Georgia, for Appellant. Har-
old Watson Gowdy, III, Assistant United States Attorney, Greenville,
South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United
States Attorney, Greenville, South Carolina, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

On August 26, 1997, appellant Troy Rolle was charged in the District of South Carolina with conspiracy to traffic in cocaine and cocaine base, and possession of the same with intent to distribute.[1] Rolle's trial on these charges was conducted in the district court in Spartanburg on March 3 and 4, 1998, at the conclusion of which the jury returned a verdict of guilty on both counts. Following his sentencing to life in prison on each count, Rolle appeals his convictions and sentences.

In his appeal, Rolle asserts numerous errors, specifically that: (1) he was denied his right to be present during the district court's questioning of prospective jurors; (2) the district court erred in striking some prospective jurors for cause and failing to strike others; (3) the Government exercised its peremptory strikes in a racially discriminatory fashion; (4) the evidence was insufficient to support his conspiracy conviction; (5) the prosecutor improperly vouched for the credibility of a crucial witness; and (6) the district court erroneously calculated the amount of cocaine attributable to him for sentencing purposes. Finally, Rolle asserts ineffective assistance of counsel at trial. For the reasons enunciated below, we find no reversible error and affirm Rolle's convictions and sentences.

I.

A.

Jury selection for Rolle's trial began on March 3, 1998. As is a common practice, potential jurors completed questionnaires prior to trial for use of the parties and the court. The questionnaires were designed to determine each juror's ability to be fair and impartial, and

---

**1** The two-count indictment specifically charged Rolle with conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and also with possession of cocaine and cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

2

to otherwise assist in the jury selection process. Based on responses to these questionnaires, the Government and Rolle's trial counsel identified approximately sixteen potentially biased jurors to the court. The court determined that individual voir dire of these jurors was necessary, so it summoned them singly into chambers, together with the attorneys.[2] The court and the attorneys then closely questioned the jurors to assess their impartiality. This process consumed two to three hours, occupying substantially the entire morning of the first day of trial.[3]

As the identified jurors were being called into chambers, Rolle remained in the custody of the Marshal in the courtroom, and he was not physically present for any of the individual voir dire. No objection was made to any of these procedures, by either Rolle's counsel or by the Government attorneys. Subsequent to the individual voir dire of these prospective jurors, the proceedings reconvened in open court. The exercise of peremptory strikes by the parties, and completion of other jury selection procedures, occurred in Rolle's presence.

_____

[2] In preparing for the individual voir dire proceedings, the district court informed the venire as follows:

> With some of you there are some questions that have been raised as to some of the responses to the questions. And I'm going to at this time bring you into another room, confidentially, and ask you additional questions concerning your responses. So we're going through that process at this time. In that connection, I'm going to need all attorneys involved in criminal cases to participate in this. I'm going to have the court reporter go into the jury room and we'll go in and call you in one at a time. We'll do that at this time.

J.A. 56. The court ultimately called only twelve of the identified jurors into chambers. It struck the other four potentially biased prospective jurors for cause without questioning them individually.

[3] The jury selection process occurred in three distinct stages. First, a general voir dire of the entire venire took place after the court initially convened. Second, after concerns were raised regarding the potential bias of certain prospective jurors, the court conducted individual voir dire of the identified jurors in chambers. Third, after the individual voir dire was concluded, the proceedings reconvened in open court to complete the jury selection process.

3

Rolle asserts on appeal that his exclusion from the individual voir dire proceedings requires reversal of his convictions. As we explain below, we are unable to find reversible error.

B.

The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment together guarantee a defendant charged with a felony the right to be present at all critical stages of his trial. As a constitutional matter, a defendant thus has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n.15 (1975) (citation omitted). We have recognized that an accused's absence during the jury selection process can potentially frustrate the fairness of a trial by denying the defendant an opportunity to "give advice or suggestions to his lawyer concerning potential jurors". United States v. Camacho, 955 F.2d 950, 953 (4th Cir. 1992) (citation omitted). Furthermore, an accused's absence from portions of voir dire may also prevent him from effectively exercising his peremptory challenges, a "process that is essential to an impartial trial." Id. (citing Lewis v. United States, 146 U.S. 370, 378 (1892)).

Rule 43(a) of the Federal Rules of Criminal Procedure, deriving from these constitutional guarantees and the even broader common law privilege,**4** explicitly confers the more expansive right to "be pres-

_____

**4 See United States v. Gregorio** , 497 F.2d 1253, 1257-59 (4th Cir. 1974), overruled on other grounds by United States v. Rhodes, 32 F.3d 867 (4th Cir. 1994). In Gregorio, we discussed the common law foundation of the right of presence and held that, even in cases where the Sixth Amendment right of confrontation is not implicated, an accused's right of presence is premised on two basic principles:

> (1) assuring nondisruptive defendants the opportunity to observe -- and, it is to be hoped, to understand -- all stages of the trial not involving purely legal matters generally incomprehensible to the layman in order to prevent the loss of confidence in courts as instruments of justice which secret trials would engender; [and] (2) protecting the integrity and reliability of the trial mechanism by guaranteeing the defendant the opportunity to aid in his defense.

Id. at 1258-59 (citations omitted).

4

ent . . . at every stage of the trial, including the impaneling of the jury . . ." Fed. R. Crim. P. 43(a). Rule 43 was originally intended to be "a restatement of existing law." Fed. R. Crim. P. 43, 1944 Advisory Committee Note, Para. 1 (citations omitted). As we noted in Camacho, Rule 43 has "traditionally been understood to codify both a defendant's constitutional right and his common law right to presence. Accordingly, its `protective scope' is broader than the constitutional right alone." Camacho, 955 F.2d at 953 (citations omitted).[5]

Included within the expansive scope of a criminal defendant's Rule 43(a) right of presence is the right to be present at the voir dire of prospective jurors. United States v. Tipton, 90 F.3d 861, 872 (4th Cir. 1996) (citations omitted). As we recognized in Camacho, a defendant's presence at voir dire is of utmost importance:

> [T]he defendant has unique knowledge which is important at all stages of the trial, including voir dire. At the voir dire he may, for example, identify prospective jurors that he knows. He may also have knowledge of facts about himself or the alleged crime which may not have seemed relevant to him in the tranquility of his lawyer's office, and thus may not have been disclosed, but which may become important as the individual prejudices or inclinations of the jurors are revealed. He may also be a member of the community in which he will be tried and might be sensitive to particular local prejudices his lawyer does not know about.

Camacho, 955 F.2d at 956 (quoting United States v. Alessandrello, 637 F.2d 131, 151 (3rd Cir. 1980) (Higginbotham, J., dissenting) (decision holding that brief absence from voir dire was harmless error)).

Although it earlier asserted a contrary position, the Government now concedes that Rolle had a right to be present during the individ-

_____

**5** **See Gregorio**, 497 F.2d at 1257 (reasoning that, because the language in Rule 43 "is a crystallization of these statements of the common law, we believe that the rule should be interpreted in light of the evolving meanings and purposes of the common law").

5

ual voir dire in the court's chambers.**6** Here, the judge and counsel privately questioned twelve prospective jurors while Rolle was in the Marshal's custody in the courtroom. At no time did anyone suggest or assert that Rolle should be present during this stage of trial. However, at oral argument, the Government conceded that an error occurred and acknowledged that, pursuant to its responsibilities to the

---

**6** In its brief, the Government initially contended that Rolle had no right to be present, characterizing the in camera proceedings conducted here as a hearing on challenges for cause. It asserted that such a hearing is a "legal conference" and maintained that a defendant's presence is not required at a conference or argument on a question of law. See Fed. R. Crim. P. 43(c)(3). However, a "hearing on challenges for cause" is an incomplete and inaccurate characterization of the proceedings at issue here.

The Government alternatively maintained that if Rolle had a right to attend the in camera proceedings, he waived that right when, after the district court announced its intention to individually question certain jurors, Rolle did not request to be present. In support of this argument, the Government relied on United States v. Gagnon , 470 U.S. 522, 528 (1985) (district court need not obtain express waiver "for every trial conference which a defendant may have a right to attend"), as well as our decision in United States v. Ford, 88 F.3d 1350, 1368 (4th Cir. 1996) (defendants waived their right to attend individual voir dire of prospective jurors conducted at the bench by failing to object before the jury was sworn). At oral argument, however, the Government altered its position, indicating that the "better argument" is that Rolle's failure to object resulted in a procedural forfeiture, rather than a waiver.

We agree, and find both Gagnon and Ford readily distinguishable. The proceedings here were entirely different from the trial conference in Gagnon and the bench conference (with the defendants present in the courtroom) in Ford. Here, the district court conducted portions of voir dire in its chambers outside of Rolle's presence without effectively making the scope of the proceedings known. It is not clear from the district court's statement to the venire, see supra at 3 n.2, that the in camera proceedings were intended to address the issue of whether prospective jurors could be impartial. Thus, Rolle was never specifically advised and cannot reasonably be said to have understood that the in camera proceedings would encompass questions of potential bias and impartiality. Accordingly, Rolle could not have knowingly and voluntarily waived his right to be present during the individual voir dire conducted in chambers.

6

justice system, it should have drawn the court's attention to Rolle's absence during the proceedings in question.**7**

C.

1.

Our analysis of Rolle's claim is informed by our <u>Tipton</u> decision, where we addressed a similar violation of a defendant's right of presence. There, we examined whether the exclusion of the defendants from in camera individualized examinations of prospective jurors, designed to explore the jurors' attitudes on the death penalty and reveal potential racial biases, constituted reversible error. We assumed in <u>Tipton</u>, without deciding, that error had occurred "in the form of a `deviation' from the constitutionally-grounded legal rule that presence was required throughout the proceedings at issue." 90 F.3d at 874. We assumed further that any such error was "plain." <u>Id.</u>

Like the defendants in <u>Tipton</u>, neither Rolle nor his counsel made any contemporaneous challenge to the voir dire proceedings being conducted in Rolle's absence; thus, we are required to examine

_____

**7** Prosecutors have "a unique role in the criminal justice system, which regards them not just as advocates but as ministers of justice." ABA/BNA Law. Manual on Prof. Conduct, 61:601 (1999). As such, the prosecutor has a special obligation to the criminal justice system to see that justice is done and ensure that a "defendant is accorded procedural justice and that guilt is decided on the basis of sufficient evidence." Model Rules of Professional Conduct, Rule 3.8 cmt. (1995). When prosecutorial efforts fall short of this obligation, we are reminded of Justice Sutherland's classic admonition:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935). We would be remiss, however, if we failed to note the commendable candor with which counsel for the Government has acknowledged its responsibility to the court.

Rolle's exclusion from these proceedings under the"plain error" analysis. Fed. R. Crim. P. 52(b).**8** While Rolle's failure to object does not necessarily extinguish any error caused thereby, it imposes stringent limitations on our ability to correct any such error.

The Supreme Court's holding in United States v. Olano, 507 U.S. 725 (1993), guides our analysis on the proper application of Rule 52(b)'s "plain error" limitation on appellate notice of forfeited errors. Under Olano, four conditions must be met to notice plain error under Rule 52(b): (1) there must be error, i.e., a deviation from a legal rule; (2) the error must be plain under current law; (3) the plain error must affect substantial rights, which typically means that the defendant is prejudiced by the error in that it "affected the outcome" of the proceedings; and (4) the error must seriously affect"the fairness, integrity or public reputation of judicial proceedings." Id. at 733-36. As the Supreme Court's holding in Olano indicates, we may correct forfeited error only if it is "plain" and "affects substantial rights." Even then we are "not required to do so" unless the error is one that "causes the conviction or sentencing of an actually innocent defendant," or otherwise "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 735-36 (citations omitted).

## 2.

Our application of the relevant authorities to these facts compels us to hold that Rolle's absence from the individual voir dire proceedings conducted in his trial violated his right to be present during the critical stage of jury selection. Having demonstrated a plain deviation from the constitutionally-grounded strictures of Rule 43(a), Rolle has, under these facts, satisfied the first two prongs of Olano. However, Rolle's claim of reversible error must fail if the error did not affect any of Rolle's "substantial rights."

_____

**8** Rule 52(b) provides, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

8

3.

In <u>Olano</u>, the Court indicated that there are potentially three ways to demonstrate that plain error has prejudiced an accused's substantial rights. First, a defendant may demonstrate that an error affected his substantial rights by a specific showing -- the burden being upon him -- that the error has caused him actual prejudice by affecting the outcome of the trial. <u>Id.</u> at 734.**9**  Second, aside from this most obvious means, the Court noted -- without deciding -- that there might be forms of forfeited error that, for Rule 52(b) purposes, affect substantial rights independent of any prejudicial impact. <u>Id.</u> at 735. Third, the Court also suggested that there may be categories of error from which prejudice should be presumed, notwithstanding that the defendant could not make a specific showing. <u>Id.</u> at 735.

Adhering to the Court's analysis in <u>Olano</u>, we recognized in <u>Tipton</u> that we must "address all three possibilities, assuming arguendo the existence of the latter two forms of correctable forfeited errors as to which actual prejudice either need not or cannot be proved." 90 F.3d at 874 (citation omitted). Rolle does not assert, however, that the error here falls within either of the latter two categories, instead relying on his claim of actual prejudice.

Rolle's reluctance to embrace either of the two latter categories is prudent and reasonable in light of <u>Tipton</u>. As for the second category, errors that affect substantial rights independent of any prejudicial impact, we concluded in <u>Tipton</u> that if such a category of plain error does in fact exist, "absence from portions of a jury voir dire is not among them." <u>Id.</u> at 875. Similarly, with regard to the third category, we stated that while "[t]here may be circumstances of involuntary absence from jury voir dire where prejudice should be presumed . . . we think they could only involve absences throughout the entire process." <u>Id.</u> (citing <u>United States v. Crutcher</u>, 405 F.2d 239, 244 (2d Cir. 1968) (complete absence never harmless error)); <u>see also Camacho</u>,

_____

**9** The Court indicated that such a specific showing would ordinarily be the only means of demonstrating that an error has affected substantial rights, stating, "In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial." 507 U.S. at 734 (citation omitted).

9

955 F.2d at 955-57 (while not reaching the issue of whether such error could ever be harmless, refusing to hold defendant's absence from the entire voir dire process to be harmless beyond a reasonable doubt). Therefore, if any prejudice to Rolle is to be found in this instance, it must be by a specific showing.

To establish actual prejudice, Rolle must show that his absence from the individual voir dire proceedings in his case "affected the outcome of the [trial]," or "probably influenced the verdict[s]" against him. Olano, 507 U.S. at 734-35. As we noted in Tipton, exactly how a criminal defendant may demonstrate "that his absence during portions of a jury selection process actually `affected the outcome of [trial],' or `probably influenced the verdict' against him has never been definitively explored." 90 F.3d at 876. Strictly construed, the "actual prejudice" standard appears to require Rolle to establish that his absence

> resulted in selection of a jury that probably reached a verdict different from that which would have been reached by a jury selected with benefit of his presence at the times of his absence.

Id. If this is the ultimate burden, we have recognized that it is "near if not beyond the limits of practical possibility[to carry] given the variables in the process and evidentiary restrictions." Id.

If his burden is not this stringent, Rolle would at least be compelled to demonstrate that his absence somehow affected the selection of the jury. Id. As Judge Phillips noted in Tipton, an accused's right to presence is not violated, and thus could not be prejudicial, unless his presence would have made some demonstrable difference. Id. At the same time, however, merely demonstrating that "some difference" in the makeup of the jury would have resulted from his presence is not sufficient for Rolle to establish actual prejudice. As we explained in Tipton:

> If no more is shown, for example, than that jurors 1, 3, and 5 would have been excluded, this could not suffice to show that their presence caused the finally unfavorable"outcome." Something more, for example, that jurors 1, 3, and

10

in the above hypothetical were demonstrably biased, surely must be shown, and even that might not, under all the circumstances, suffice.

Id. We have never explicitly determined what precise showing between these two extremes (on one hand, demonstrating that the verdict would have been different, and on the other hand, merely showing that the jury might have been constituted in a meaningfully different way) is sufficient to establish actual prejudice. Nevertheless, we need not make this determination here, since we conclude that Rolle has failed to meet even the lesser threshold.

In support of his claim that we should find actual prejudice, Rolle asserts the following: (a) no African-Americans were on the jury; (b) he was denied the opportunity to ask questions of and provide input to his counsel in determining the qualifications of those jurors who were ultimately chosen to hear the case; (c) he was denied the opportunity to comment or raise objections through counsel when the court, in camera, struck certain jurors for cause and sought to rehabilitate others; and (d) his presence in the courtroom after the in camera proceedings was insufficient to address the above deficiencies, since he lacked the information necessary to participate intelligently in jury selection.

While recognizing the validity of Rolle's concerns, we are unable to conclude that his proffered reasons are sufficient to demonstrate actual prejudice. Clearly, Rolle is unable to show that his absence from the individual voir dire proceedings actually resulted in a jury panel that reached a verdict different from that which would have been reached otherwise. Indeed, Rolle is unable to demonstrate anything beyond his mere speculation that the makeup of the jury panel might have been different.**10** In Tipton, we explicitly rejected this posi-

_____

**10** Contrary to the representations of counsel at oral argument, our review of the record indicates that one of the prospective jurors questioned in individual voir dire, Juror No. 104, was in fact impanelled. Nevertheless, Rolle does not specifically allege that this juror would have been excluded from the jury if Rolle had attended the individual voir dire proceedings; even if he had established such an allegation, this alone would not be enough to evidence actual prejudice.

11

tion as being insufficient to establish actual prejudice. 90 F.3d at 876. Accordingly, we conclude that Rolle has failed to carry his burden to demonstrate actual prejudice resulting from his absence during the individual voir dire proceedings.

D.

In sum, we conclude that the exclusion of Rolle from an important portion of his criminal trial -- the individual voir dire of twelve members of the prospective jury panel -- was a violation of his constitutionally-grounded Rule 43 right to be present, and therefore constitutes "error" that is "plain." However, because Rolle is unable to demonstrate that his absence from these voir dire proceedings affected his "substantial rights," there is no reversible error to be found.[11]

II.

A.

We have carefully considered the remainder of Rolle's challenges to his convictions, see supra at 2, and we conclude that none are of sufficient merit to warrant reversal of the district court's judgment. We withhold adjudication, however, of Rolle's assertion that his trial counsel was ineffective, inasmuch as the record below fails to conclusively establish counsel's alleged ineffectiveness. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Rolle may choose to present this claim in a proceeding under 28 U.S.C. § 2255.

B.

Rolle contends that the district court incorrectly calculated the quantity of cocaine attributable to him for sentencing purposes. Rolle was sentenced as a career offender, see United States Sentencing Commission, Guidelines Manual, §4B1.1, with the result that his

_____

[11] Having found no prejudice, we need not consider the fourth prong of the Olano analysis to determine whether the error here, even if prejudicial, so "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings" as to warrant correction.

12

offense level was determined with regard to the statutory maximum penalty applicable to the counts of conviction.

It is undisputed that, upon his arrest, Rolle was found with 187 grams of cocaine base, an amount subjecting him to a maximum penalty of life imprisonment. See 21 U.S.C.§ 841(b)(1)(A) (conviction for possession with the intent to distribute 50 grams or more of cocaine base requires term of imprisonment that"may not be less than 10 years or more than life"). Rolle's offense level was therefore calculated as 37, see U.S.S.G. § 4B1.1(A), with a concomitant criminal history category of VI. Because Rolle was sentenced within the resultant imprisonment range of 360 months to life, any miscalculation that the district court may have made with regard to attributing additional quantities of drugs to Rolle was immaterial.

III.

For the foregoing reasons, we affirm Rolle's convictions and sentences in all respects.

AFFIRMED

13