**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GARY D'ANGELO MCDUFFIE,
*Defendant-Appellant.*

No. 99-4883

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

BENNIE D. TURNER, JR.,
*Defendant-Appellant.*

No. 99-4914

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ERIC SYLVESTER DORSEY,
*Defendant-Appellant.*

No. 99-4915

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-99-203)

Argued: September 25, 2001

Decided: December 20, 2001

Before WIDENER, NIEMEYER, and MICHAEL, Circuit Judges.

Affirmed by unpublished opinion. Judge Widener wrote the opinion, in which Judge Niemeyer and Judge Michael joined.

## COUNSEL

**ARGUED:** Dale Warren Dover, Alexandria, Virginia, for Appellant Dorsey; Thomas Brian Walsh, MARTIN, ARIF, PETROVICH & WALSH, Springfield, Virginia, for Appellant McDuffie; David Thomas Williams, WILLIAM B. CUMMINGS, P.C., Alexandria, Virginia, for Appellant Turner. Robert Andrew Spencer, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** William B. Cummings, WILLIAM B. CUMMINGS, P.C., Alexandria, Virginia, for Appellant Turner. Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

WIDENER, Circuit Judge:

Defendants Gary McDuffie, Eric Dorsey and Bennie Turner appeal their criminal convictions from a jury trial for assorted combinations of conspiracy, bank and post office robbery, use of a firearm in a crime of violence and other firearms violations, and witness tampering. The defendants raise multiple issues on appeal including, inter alia, whether a police officer may request a passenger in a lawfully stopped vehicle to produce identification; the admissibility of prior out-of-court statements by a deceased robbery victim; evidence of an overt act charged in the conspiracy that occurred outside the jurisdiction; and the district court's handling of three separate jury incidents.

For the reasons that follow, we affirm.

## I.

On March 23, 1999 defendants were stopped for speeding by an Arlington County police officer. Prior to the stop, the driver of the van in which defendants were riding, Gary Spinner, had pulled alongside the police car and asked the officer for directions. Based on his observations of the vehicle and its occupants, the officer followed the van and subsequently initiated a traffic stop when the vehicle exceeded the speed limit. Spinner was driving the van, Dorsey was in the front passenger seat; Turner was sitting directly behind the driver; and, McDuffie was sitting in the third seat, at the very rear of the van.

In the course of the traffic stop, the officer determined that the driver of the van, Spinner, did not have a valid license. When the officer asked passenger Dorsey to check the glove box for Spinner's license and registration, he observed a surgical glove on the floor of the van. The officer asked Dorsey for identification and ran a check on the card Dorsey produced which revealed an outstanding warrant for robbery. The officer asked Dorsey to step out of the van and as he was doing so, a black ski mask fell to the ground.

With the assistance of backup officers, McDuffie and Turner were also removed from the van and all four men were handcuffed. A search of the van revealed a sawed-off shotgun, a handgun, ammunition, a black ski mask, surgical gloves, brown cloth gloves, a mask made from a long underwear sleeve, a camouflage bandana and a skull cap. In addition, Dorsey had straws and a pipe used for smoking or inhaling narcotics, and both Spinner and Dorsey had pawn receipts for jewelry which had been stolen from a Washington, D.C. jeweler on January 26, 1999.

Spinner pleaded guilty to bank robbery and to using a firearm in a crime of violence, cooperated with the government, and testified at trial against McDuffie, Dorsey, and Turner.

Prior to trial, the district court denied defendants' motion to suppress the evidence seized from the van, finding that the stop was a legitimate traffic stop. The district court also denied defendants' motion to strike the D.C. jewelry store robbery from the indictment, concluding that venue was proper in any district where at least one

overt act had occurred and there were significant substantive offenses alleged to have occurred in the court's jurisdiction.

In addition, finding enough indicia of reliability, the court granted the prosecution's motion in limine to admit a prior statement of identification made by a deceased witness. The witness, who committed suicide before trial, was an employee in the D.C. jewelry store robbery who had made statements to police and identified Dorsey in a photo spread.

Three jury issues developed in the final stages of the trial. First, during the trial a personal friend of one of the jurors was stabbed to death and the incident was reported in the *Washington Post*. Because the event had been the subject of some discussion among the jurors, the court conducted voir dire of each juror to determine if they had been affected so that they could no longer be impartial. Based on the jurors' demeanor and responses to questioning, the court concluded that the jury had not been tainted and denied defendants' motion for a mistrial.

Second, upon returning guilty verdicts on all counts, the jury requested that the court address a question they had but "not in open court:" "What safeguards are in place ensuring safety of jurors?" After the verdicts were delivered, the court cleared the courtroom of both spectators and the three defendants to address the jury's safety question. The court asked the jury if they had felt threatened or intimidated during the trial and if the people in the gallery had in any respect affected the jury's judgment in the case. The court was satisfied by the jury's responses that the jury properly and fairly adjudicated the case. In response to the jury question about jury safeguards, the court generally described the limitations on circulation of jury lists and the prohibition on attorneys or party litigants questioning jurors about the verdict without leave of court.

The third jury issue arose from a comment made by a departing juror. After the jury was excused, as the jury was leaving, the juror, as she was exiting the courtroom made a thumbs-up gesture and comment to the prosecutors, saying, "You made up for O.J." The court called the juror back and questioned her, under oath, about her comment and specifically inquired whether the defendants' race (all were

African American) had influenced her decision to find them guilty. The juror denied that the comment had been race related and apologized for her remark, which she described as flippant and stupid. The juror explained that she had African-American people in her own family and meant only that the O.J. Simpson trial had been a personal disappointment to her and that this trial had restored her faith in the government because of the exemplary preparation and behavior of the government lawyers and expert witnesses. Although the court afforded them the opportunity, counsel for defendants declined to submit any additional questions to the court to be posed to the juror.

Defendants filed motions for a mistrial, or alternatively, a new trial which were denied. This appeal followed.

II.

A.

The district court denied a motion to suppress the fruits of what Dorsey claimed was an illegal search. Specifically, Dorsey objected to an officer's request for identification during a lawful traffic stop of the van in which he was a passenger. The district court's legal conclusions underlying a suppression determination are reviewed de novo while its factual findings are reviewed for clear error. *United States v. Allen*, 159 F.3d 832, 838 (4th Cir. 1998). There is no dispute that the van was legally stopped for speeding. It is also undisputed that Dorsey voluntarily produced his identification when requested to do so by the officer. A computer check of this identification revealed an outstanding warrant for Dorsey's arrest.

It is clear that the temporary detention of individuals as the result of a traffic stop is a seizure within the context of the Fourth Amendment. *United States v. Brugal*, 209 F.3d 353, 356 (4th Cir. 2000) (en banc). Here the seizure was a legal traffic stop based on probable cause that the vehicle was speeding, going 62 mph in a 45-mph zone. The Fourth Amendment is not implicated, however, in every instance when an officer attempts to question citizens he encounters. See *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000). Having determined that the driver of the vehicle did not possess a valid driver's license, the officer's request to the passengers to produce identifi-

cation, to determine whether anyone present could drive the vehicle away after the traffic stop, was entirely reasonable.

Even if the request for identification could be construed as a search, however, the search was lawful in this case because Dorsey's production of identification was consensual. See *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995). Dorsey did not object in any way to producing his identification at the officer's request and voluntarily removed his ID from his wallet and handed it to the officer. Accordingly, the district court's denial of the suppression motion is affirmed.

## B.

Defendants next contend that the court erred in admitting evidence of an overt act, the D.C. jewelry store robbery, although charged in the indictment, because that occurred outside the jurisdiction. The indictment against defendants charged a single conspiracy in violation of 18 U.S.C. § 371, based on violations of (1) 18 U.S.C. § 2113(a) & (d), bank robberies in the Eastern District of Virginia; (2) 18 U.S.C. § 2114(a), post office robberies in the Eastern District of Virginia and Maryland; and (3) 18 U.S.C. § 1951(a), interference with interstate commerce arising from the robbery of a jewelry store in Washington, D.C.

A single conspiracy can be found when the conspiracy has "the same objective, the same results, and the same product." *United States v. Crockett*, 813 F.2d 1310, 1317 (4th Cir. 1987). Furthermore, "a conspiracy may be prosecuted in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed." *United States v. Gilliam*, 975 F.2d 1050, 1057 (4th Cir. 1992). The jewelry store robbery was part of the same conspiracy that led to the robbery of banks and post offices. We are of opinion the district court correctly admitted evidence of the robbery that occurred in Washington, D.C. to demonstrate an overt act in furtherance of the § 371 conspiracy. Indeed, that robbery was explicitly and properly included in the indictment as an overt act.

Defendants next contend that the district court erred in granting the government's motion in limine to admit hearsay testimony from a

deceased witness, Stephanie Williams, a victim of the D.C. jewelry store robbery who committed suicide prior to the defendants' trial.

Prior to her suicide, Williams made a tentative photo identification of Dorsey as one of the men who had robbed the D.C. jewelry store where she worked. Although Williams made her identification perhaps in the presence of police officers and accompanied by her lawyer-boyfriend, the circumstances under which we have found guarantees of trustworthiness were not present here. Williams was not under oath, see *United States v. McHan*, 101 F.3d 1027, 1038 (4th Cir. 1996), was not providing grand jury testimony, see *United States v. Murphy*, 696 F.2d 282, 286 (4th Cir. 1982), nor was she compelled to be truthful by a plea agreement, see *United States v. Ellis*, 951 F.2d 580, 583 (4th Cir. 1991). In addition, Williams was at one time considered a suspect in the robbery, a circumstance that, if she were guilty, undermined her incentive to be truthful and similarly undermines the reliability of her statements. We are of opinion the indications of reliability were not sufficient to admit this otherwise inadmissible hearsay.

But in this case, any such error was harmless. Dorsey's involvement in the jewelry store robbery was supported by his unexplained possession of pawn receipts for jewelry stolen from the store found upon him when he was arrested. Similarly, the testimony of Spinner that Dorsey planned and participated in the robbery with him was corroborated by Spinner's similar possession of like pawn receipts at the time of his arrest. In addition, the pawn receipts of both Spinner and Dorsey were identified by the testimony of an employee of the pawn shop, who matched them with the stolen articles of jewelry. Again, this testimony was without explanation, so we are of opinion the hearsay testimony of Williams was harmless error. While the mere fact of sufficient other evidence to support the result will not suffice, because we can, and do, say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," we therefore "conclude that substantial rights were not affected." *Koteakos v. United States*, 328 U.S. 750, 765 (1946).

## C.

Defendants also contend that the district court violated their rights under the Fifth Amendment and Rule 43 of the Federal Rules of

Criminal Procedure to be present during trial and their Sixth Amendment right to a public trial, by addressing the jury's question regarding precautions for juror safety in the absence of defendants. Additionally, defendants argue that the district court failed to provide a meaningful opportunity to determine if there was juror bias.

The jury, in a note announcing it had reached a verdict, asked the court to address its concerns about juror safety. After the jury rendered its verdict and was polled, the court, without objection from counsel,[1] cleared the courtroom except for counsel, addressed the jurors' safety concerns and conducted voir dire to assess potential bias related to the jurors' fears. Satisfied that the jury had considered the case properly and fairly, the district court dismissed the jury.

Also after the verdict, one juror, as she departed, made the congratulatory remark complained of to the prosecution, contrasting the trial to the O.J. Simpson trial. The court recalled the juror, questioned her about the remark itself and whether she harbored any racial bias that may have influenced her verdict. Defense counsel were present, although defendants were not, and declined the opportunity to have the court pose additional questions of the juror.

Based on the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment, a defendant has a constitutional "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *United States v. Rolle*, 204 F.3d 133, 136 (4th Cir. 2000) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)). In addition, Rule 43 of the

---

[1]At oral argument counsel for defendant McDuffie asserted that although he made no formal objection at the time the district court cleared the courtroom, the objection was an "ongoing objection" from when he first requested the opportunity to talk to his client regarding the court's intention to clear the courtroom to address the jury's safety question. The record is clear, however, that no objection was made during the bench conference when the court informed counsel that it had decided to clear the courtroom of everyone, nor was an objection made when the court actually ordered the defendants back to the cellblock and all spectators removed to the hallway. In all events, we are of opinion that McDuffie's substantial rights were not affected.

Federal Rules of Criminal Procedure not only embodies this constitutional guarantee, but also codifies the broader common law right of presence, explicitly providing a defendant with the right to be present at every stage of the trial.[2] *Rolle*, 204 F.3d at 136-37 (citations omitted).

We have held that Rule 43 "mandates that a defendant be physically present at sentencing," *United States v. Lawrence*, 248 F.3d 300, 302 (4th Cir. 2001), and that defendants have "a right to be present at trial during the impaneling of the jury and during direct testimony," *United States v. Camacho*, 955 F.2d 950, 953 (4th Cir. 1992), and the right to be present at the voir dire of prospective jurors, *United States v. Tipton*, 90 F.3d 861, 872 (4th Cir. 1996), even if the voir dire is conducted individually in an in camera proceeding, *United States v. Rolle*, 204 F.3d 133, 137 (4th Cir. 2000).

---

[2]Fed. R. Crim. P. 43 in pertinent part states:

(a)   Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b)   Continued Presence Not Required. The further progress of the trial to and including the return of the verdict, and the imposition of sentence, will not be prevented and the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial, or having pleaded guilty or nolo contendere,

(1)   is voluntarily absent after the trial has commenced-(whether or not the defendant had been informed by the court of the obligation to remain during the trial),

(2)   in a noncapital case, is voluntarily absent at the imposition of sentence, or

(3)   after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

We note that the limited exceptions of 43(b) are not implicated in this case.

In *United States v. Rhodes*, 32 F.3d 867 (4th Cir. 1994), we considered the narrow question of whether the defendant must be present when an answer to a jury question sent out during deliberations is formulated and given. We held that it was "error to conduct, without the presence of the defendant, an in chambers discussion with counsel for the government and the defendant about a substantive question with respect to its instructions sent out by a deliberating jury." *Rhodes*, 32 F.3d at 874. Unlike *Rhodes*, however, in this case, the exchange between the court and the jury regarding juror safety and the questioning of the juror who made the departing comment occurred after the jury had completed its deliberations and, significantly, after the jury had delivered the verdict in the trial. There is nothing in the plain language of Rule 43 or our cases to suggest that a defendant has a right to be present after the verdict has been rendered.

Because defendants raised no objection at trial, we review the decision to exclude defendants from this exchange for plain error. *Rolle*, 204 F.3d at 138. The allegation of error in this case is significantly undercut by the fact that the exchanges took place post-verdict and in the presence of counsel. Even assuming arguendo that we could find error, defendants cannot meet their burden to establish that such an error affected their substantial rights, which requires a showing that the error has caused "actual prejudice by affecting the outcome of the trial." *Rolle*, 204 F.3d at 139. As the district court found, the evidence of guilt was overwhelming, thus any alleged error was harmless.

In addition, the district court conducted extensive voir dire of the jury in the presence of defendants' counsel, who had the opportunity to submit questions which would be posed to the jury by the court. The unambiguous answers given by the jurors indicating that the verdict was not in any way affected by safety concerns further support the lack of prejudice. Similarly, the district court found the explanation given by the juror who made the inappropriate comment upon departing to be credible and the court was satisfied that the comment was not a reflection of racial bias or misconduct. Accordingly, the district court properly denied the motions for a new trial or mistrial.

III.

We have discussed in more detail above the principal points in this appeal. We have also considered the various challenges to venue;

Dorsey's challenge to the sufficiency of the evidence with respect to his various convictions; McDuffie's challenge to the sufficiency of the evidence with respect to his various convictions; and Turner's challenge to the sufficiency of the evidence to support the conspiracy charge of which he was convicted. We are of opinion there was no error in the venue charged, the Eastern District of Virginia, and that the evidence supported the verdicts against Dorsey, McDuffie and Turner.

The judgment of the district court in each case is accordingly

*AFFIRMED.*[3]

---

[3]The defendant's motion to file a pro se supplemental brief is granted.